UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

RUTH DESRAMEAUX,

        Plaintiff,

    -against-

DELTA AIR LINES INC.,

        Defendant.

-------------------------------------------------------x



FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ MAR - 8 2018 ★
BROOKLYN OFFICE

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
2:15-CV-347 (CBA) (VMS)

**AMON, United States District Judge:**

    Before the Court is Defendant Delta Air Lines Inc.'s ("Delta's") post-discovery motion for summary judgment in the instant action by <u>pro se</u> Plaintiff Ruth Desrameaux ("Desrameaux"). For the following reasons, the Court grants in part and denies in part the motion. Moreover, in light of Desrameaux's <u>pro se</u> status, the Court grants her leave to add a new claim under 42 U.S.C. § 1981.

<b>BACKGROUND</b>

    The Court details facts relevant to the instant joint motion and construes them "in the light most favorable to" Desrameaux. <u>Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay</u>, 868 F.3d 104, 109 (2d Cir. 2017). The Court draws the facts from "cited materials" in the summary judgment briefing. Fed. R. Civ. P. 56(c)(1), 56(c)(3).[1] Desrameaux, who is black,

---

[1] (<u>See also</u> Mem. of Law in Supp. of Def. Mot. for Summ. J. ("Def. Br."), D.E. # 39-4; Def.'s Rule 56.1 Stat. of Material Facts ("Def. 56.1 Stat."), D.E. # 39-2; Affirmation of John O. Brennan, Esq. in Supp. of Def.'s Mot for Summ. J. ("Brennan Decl."), D.E. #39-3; Affirmation of Pl. in Opp. To Def.'s Mot. for Summ. J. ("Pl. Decl."), D.E. # 39-6; Pl.'s Rule 56.1 Counterstat. ("Pl. 56.1 Counterstat."), D.E. # 39-5; Mem. of Law in Reply to Pl.'s Opp., D.E. # 39-8; Def.'s Rule 56.1 Counterstat. to Pl.'s Rule 56.1 Counterstat. ("Def. 56.1 Counterstat."), D.E. # 39-7; Pl.'s Sur-Reply in Opp. to Def.'s Mot. for Summ. J. ("Pl. Reply"), D.E. # 40-1.) The Court also finds that the record materials support any portions of the Local Rule 56.1 statement or counterstatement cited in this Memorandum and Order. <u>See</u> <u>Vt. Teddy Bear Co. v. 1-800 Beargram Co.</u>, 373 F.3d 241, 244 (2d Cir. 2004). Of the cited materials, the Court considers the affidavits and declarations to the extent they are "made on personal knowledge," "set forth such facts as would be admissible in evidence," "show affirmatively that the affiant is competent to testify," and do not contradict prior deposition testimony. Fed. R. Civ. P. 56(e); <u>see also</u> <u>Hayes v. N.Y.C. Dep't of Corr.</u>, 84 F.3d 614, 619 (2d Cir. 1996). Moreover, the materials "need be considered only to the extent that [they] would have been admissible at trial." <u>Garcia v. Hartford Police Dep't</u>, 706 F.3d 120, 127 (2d Cir. 2013).

is a New York citizen, and Delta is a citizen of Delaware and Georgia. (See Def. 56.1 Stat. ¶¶ 7, 9; Pl. Decl. ¶ 2.) Desrameaux purchased a ticket from Delta to travel from New York City to Fort Lauderdale, Florida, with a connecting flight in Atlanta, on December 15, 2011. (56.1 Stat. ¶ 3; Pl. 56.1 Counterstat. ¶ 3.)

Called the Delta Domestic General Rules Tariff, a contract of carriage between Desrameaux and Delta began when she purchased the ticket. (Def. 56.1 Stat. ¶¶ 22–23; see also Brennan Decl., Ex. G-F ("Contract").) The contract contains three provisions relevant to the instant action. First, under Rule 3, Delta pledges that it "will use its best efforts to carry the passenger and baggage with reasonable dispatch." (Id. at 3 (emphasis in original); see also D.E. # 1 at 6.) Second, Rule 190 states:

> Ticketed passengers . . . may carry baggage on board the aircraft, subject to the provisions of this rule.
>
> A. Free Baggage Allowance
>
> 1. Checked Bags and Carry-On Items
>
> Delta will accept a maximum of one carry-on item free of charge. All baggage must meet the size and weight limits set forth in this rule to qualify. Lower limits may apply on some flights in Delta's sole discretion. Delta may accept additional, larger, or heavier items as checked baggage when space is available.
>
> . . .
>
> C. Carry-On Baggage
>
> The following additional conditions apply to the acceptance of carry-on baggage.
>
> 1. Subject to Space Availability
>
> Acceptance of carry-on baggage is subject to space availability on the aircraft at the time the passenger boards. If adequate space is not available, Delta may require that the baggage be checked.

3. Size and Weight Limits for Carry-On Baggage

Carry-on baggage may not exceed a maximum outside linear dimension of 45 inches or a maximum weight of 40 lbs.

. . .

E. Checked Baggage

The following additional conditions apply to the acceptance of checked baggage.

. . .

6. Excess Baggage Fees

Delta may, in its sole discretion, accept for transport baggage in excess of the maximum number, size and/or weight allowances described above. Such baggage will be accepted for transportation only upon the payment of the excess baggage fees specified in this rule. . . .

(Contract at 27–30.) According to Rule 190, the fee for the first checked bag is $25. (Id. at 31.)

The third provision is Rule 35, which states:

Delta may refuse to transport any passenger, and may remove any passenger from its aircraft at any time, for any of the following reasons:

. . .

F) Passenger's Conduct or Condition

. . . Delta will not refuse to provide transportation based upon race, color, national original, religion, sex, or ancestry. Subject to those qualifications, Delta may refuse to transport any passenger, or may remove any passenger from its aircraft, when refusal to transport or removal of the passenger is reasonably necessary in Delta's sole discretion for the passenger's comfort or safety, for the comfort or safety of other passengers or Delta employees, or for the prevention of damage to the property of Delta or its passengers or employees. By way of example, and without limitation, Delta may refuse to transport or may remove passengers from its aircraft in any of the following examples:

1) When the passenger's conduct is disorderly, abusive or violent[;]

2) When the passenger is barefoot[;]

. . .

4) When the passenger . . . fails to obey the instruction of any member of the flight crew[;]

. . .

6) When the passenger has a malodorous condition;

7) When the passenger is unable to sit in a seat with a seatbelt fastened;

. . .

9) When the passenger's behavior may be hazardous to himself/herself, the crew, or other passengers; [and]

. . .

12) When the passenger's conduct creates an unreasonable risk of offense or annoyance to other passengers.

. . .

H) Recourse of Passenger

All passengers are prohibited from engaging in any conduct that would authorize Delta to refuse transport under this Rule. The sole recourse of any passenger refused carriage or removed en route for any reason specified in this Rule shall be recovery of the refund value of the unused portion of his or her ticket as provided in Rule 260.

(Id. at 11.) Notably, the contract lacks a choice-of-law clause.

When Desrameaux arrived at the terminal in John F. Kennedy International Airport on December 15, 2011, she faced "rude treatment and discourtesies" by Delta's employees. (Pl. Decl. ¶ 56.) Jenny Medina ("Medina"), a Delta supervisor, prevented Desrameaux from getting in line

and asked her to check her carry-on luggage or else pay $25.[2] (Def. 56.1 Stat. ¶ 31; Pl. Dep.[3] at 110:15–114:12; Def. Dep.[4] at 43:19–44:3; Pl. Decl. ¶¶ 28–29, 31; Pl. Aff.[5] at 30.) When Desrameaux said she lacked the money, Medina told her to "throw [her belongings] away." (Pl. Decl. ¶ 33.) Meanwhile, a white woman was at the terminal with an oversize "log-shape brown bag approximately four (4) feet and one foot and a half (1½) of diameter," and Medina "let her get in the plane without interruption."[6] (Pl. Aff. at 32.) The white passenger's bag was "much bigger" than Desrameaux's. (Id. at 34.) Desrameaux asked "why [Medina] let other passengers get on the plane with carry-on [luggage] larger than" hers. (Pl. Dep. at 118:7–10.) According to Desrameaux, Medina replied that "if [Desrameaux] ke[pt] talking, [she] will not travel today." (Id. at 118:11–13.)

A second employee asked then-distraught Desrameaux to stuff her luggage into a "size box," which is a "container used to measure the dimensions of carry-on bags to ensure that they comply with Delta's baggage policies." (Pl. Decl. ¶ 45.) According to Desrameaux, the luggage fit.[7] (Id. ¶ 46.) She returned to Medina, who maintained that the luggage could not serve as a

---

[2] Medina testified that she did not recall requesting $25. (Def. Dep. at 80:11–12.)

[3] Desrameaux gave testimony in a deposition dated November 5, 2015. (Brennan Decl., Ex. O.)

[4] Medina served as Delta's representative pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, and she gave testimony on its behalf in a deposition dated April 15, 2016. (Brennan Decl., Ex. P.)

[5] Desrameaux prepared "errata" sheets for her November 5, 2015, deposition testimony, and she swore to their validity before a notary on February 19, 2016. (See Errata Sheet, Brennan Decl., Ex. O.) Desrameaux had only 30 days to file errata, and therefore the filing is untimely. See Fed. R. Civ. P. 30(e)(1). Nonetheless, because she proceeds pro se, she swore the statements to a notary, and the statements do not contradict her deposition testimony, the Court construes the filing as an affidavit in opposition to Delta's summary judgment motion.

[6] Medina testified that, although she did not recall a white passenger with a large bag, four-foot bags would not fit in the overhead compartments and would not be allowed on the plane. (Def. Dep. at 81:2–84:23.) Still, the Court reads the record in favor of Plaintiff at this stage.

[7] Medina testified to the contrary. (See Def. Dep. at 87:18–24.)

carry-on. (Id. at 132:19–133:17.) In a rush to make the flight, Desrameaux dropped her bag onto the floor and opened it, with her underwear, medication, and pajamas spilling out. (Id. at 129:10–133:17; Pl. Decl. ¶¶ 49–50.) Prepared to leave her luggage at the terminal, Desrameaux grabbed a few items, but a third employee told her that she could bring the bag with her onto the plane. (Pl. Dep. at 128:3–21, 132:24–133:11; Pl. Decl. ¶¶ 51–52.) According to Desrameaux, she repacked and headed onto the plane with her luggage, though a flight steward tried once more to have her check it. (Pl. Decl. ¶¶ 53–55.)

On the flight, Desrameaux arrived at her seat, removed a poster from her bag, stowed the bag, moved into her aisle, faced the back of the plane, and, while standing and remaining silent, held up a poster she had created. (Def. 56.1 Stat ¶ 33; Pl. 56.1 Counterstat. ¶ 33; Pl. Dep. at 158:14–15.) The poster said:

♥ AMERICA ♥
PRESIDENT OBAMA
FIRST LADY
OPRAH
OCT 2004 – OCT 2011
7 YEARS OF TORTURE
I'M NOT
A TERRORIST
PLEASE HELP ME

(Brennan Decl., Ex. G-G at 3.)

The next moments are unclear. Desrameaux testifies that no flight staff member approached and asked her to sit down or put away the sign. (Pl. Dep. at 152:24–153:12, 169:6–8, 178:11–20; Pl. Decl. ¶ 75.) After she had held the sign for about one or two minutes, an officer appeared. (Id. 15:5–15.)

Delta tells a different story: The flight attendant and pilot "didn't feel safe taking [Desrameaux] on the plane." (Def. Dep. at 100:14–18.) The pilot soon asked Medina to remove

Desrameaux from the airplane.[8] (Id. at 99:14–16.) Medina asked Desrameaux to leave the plane with a fellow Delta employee. (Id. at 100:21–24.) Desrameaux ignored her, remaining silent. (Id. at 101:7–13.) After telling the pilot what happened, Medina notified air traffic control. (Id. at 101:13–22.)

In any event, Port Authority staff members were called to investigate. Desrameaux testified that no officer ever asked her to sit down or to remove her sign. (Pl. 56.1 Counterstat. ¶¶ 48–49.) Still, a police report by the Port Authority of New York and New Jersey ("Port Authority") stated that a Port Authority police officer asked Desrameaux questions in the plane and that she "refus[ed] to answer" them.[9] (Brennan Decl., Ex. G-G at 2.) Though the police report said Desrameaux "walk[ed] off the aircraft," (id.), Desrameaux testified that the Port Authority officer "pulled [her] out of the plane," (Pl. Dep. at 152:17–23). (See also Def. 56.1 Stat. ¶ 43.) Medina also testified to seeing the officer "remove" Desrameaux from the plane. (Def. Dep. at 103:7–9.) No Delta employee touched her. (Pl. Dep. at 143:22–144:2.)

According to the police report, the Port Authority officer and ambulance workers transported Desrameaux and her luggage to Jamaica Hospital. (Brennan Decl., Ex. G-G at 2; Pl. Dep. at 184:17–185:4.) Desrameaux testified that, at the airport, they "forcefully" made her "sit in [a] stretcher[-like]" chair. (Pl. Dep. at 180:7–11, 191:13–21.) They tied not only her hands

---

[8] A purported "Pilot-ASR" report produced by Delta suggests that Desrameaux "was repeatedly asked to sit down to no avail." (Brennan Decl., Ex. G-A.) Another document, an "Entry Log" on the "FACTS" system, stated that Desrameaux was "asked to put the banner away." (Id., Ex. G-B.) However, Delta did not attempt to offer either report as a business record for purposes of the instant motion. The reports are hearsay. In any event, the Court must construe the record in the light most favorable to Desrameaux, whose testimony conflicts with these documents.

[9] Unlike the other reports proffered by Delta, police records obviously are admissible hearsay. Accordingly, this Court may consider the Port Authority police report in a summary judgment motion. See, e.g., Goldstein v. Laurent, No. 09-CV-2437 (PKC), 2011 WL 3586447, at *4 (S.D.N.Y. Aug. 2, 2011). However, the Court may not consider Desrameaux's purported statements in the report, because they were recounted by a third party not affiliated with the Port Authority. See, e.g., Petschauer v. United States, No. 13-CV-6335 (NGG), 2016 WL 1271035, at *4 (E.D.N.Y. March 29, 2016) (noting that statements in a police record are hearsay within hearsay).

behind her back but also her feet together. (Id. at 180:25.) One of the officers took her sign. (Pl. Dep. at 169:9–25; Pl. Aff. at 52.) When they arrived at the hospital, an officer spoke with hospital staff, and Desrameaux was admitted involuntarily. (Id. at 193:17–194:19.) She remained at the hospital for 28 to 30 hours. (Pl. Dep. at 210:5–18; Pl. Decl. ¶ 97.) The next day, she received another ticket from Delta—the result of arrangements made by her sister—and left on a direct flight to Florida at no extra charge. (Def. 56.1 Stat. ¶ 47; Pl. Dep. at 210:19–212:18.)

Then-counseled Desrameaux filed the instant action against Delta in state court on December 12, 2014, asserting contract and tort claims under New York law. (D.E. # 1.) Delta filed a notice of removal on January 21, 2015, alleging federal question and diversity jurisdiction, and Delta filed an answer on February 4, 2015. (Id. at 1; D.E. # 4) On April 9, 2015, Desrameaux's counsel withdrew from the case, and she proceeded pro se. (D.E. # 9.) Desrameaux filed a motion to appoint counsel, which the Honorable Vera M. Scanlon, United States Magistrate Judge, denied. (See D.E. # 21.) Discovery proceeded from May 8, 2015, to October 13, 2016. (D.E. # 10, 32.) Delta filed its summary judgment motion on August 4, 2017. (D.E. # 39.) In her declaration opposing the motion, Desrameaux asked this Court to stay the motion and reopen discovery, pursuant to Rule 56(d) of the Federal Rules of Civil Procedure. (D.E. # 39-6 ¶ 110.)

Three months later, on November 9, 2017, Desrameaux filed about 70 pages of additional documents. (See D.E. # 43–44.) The Court construed the filings as a request to supplement the summary judgment record and ordered her to show cause why it should not deny the request. (See D.E. dated Nov. 27, 2017.) Desrameaux submitted a letter response to the Court's Order, (D.E. # 46), and Delta replied to her letter, (D.E. # 47).

## STANDARD OF REVIEW

In its summary judgment motion, the moving party must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). "In passing upon a Rule 56 motion the district court must determine whether there are issues of fact to be tried." United States v. One Tintoretto Painting Entitled The Holy Family with Saint Catherine & Honored Donor, 691 F.2d 603, 606 (2d Cir. 1982). "A 'material' fact is one capable of influencing the case's outcome under governing substantive law, and a 'genuine' dispute is one as to which the evidence would permit a reasonable juror to find for the party opposing the motion." Figueroa v. Mazza, 825 F.3d 89, 98 (2d Cir. 2016) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)); see also Anderson, 477 U.S. at 248 ("Factual disputes that are irrelevant or unnecessary will not be counted.").

"Once a party moving for summary judgment has made the requisite showing that there is no factual dispute, the nonmoving party bears the burden of presenting evidence to show that there is, indeed, a genuine issue for trial." Santos v. Murdock, 243 F.3d 681, 683 (2d Cir. 2001). More precisely, the nonmoving party must undermine the moving party's presentation or "offer some hard evidence showing that its version of the events is not wholly fanciful," Fed. R. Civ. P. 56(c)(1)(B); Jeffreys v. City of N.Y., 426 F.3d 549, 554 (2d Cir. 2005).

Still, the rules apply less sharply to a pro se litigant like Desrameaux. See Jackson v. Fed. Express, 766 F.3d 189, 195 (2d Cir. 2014) (noting that district courts should be "particularly" "less demanding" of pro se litigants in summary judgment motions); see also Ruotolo v. IRS, 28 F.3d 6, 8 (2d Cir. 1994) ("special solicitude"). The Court must construe the pro se submissions "liberally and interpret them 'to raise the strongest arguments that they suggest.'" Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). The Court may award summary judgment against a pro se litigant "[o]nly if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

would entitle him to relief.'" Id. at 224–25 (quoting Terry v. Ashcroft, 336 F.3d 128, 137 (2d Cir. 2003)).

## DISCUSSION

The Court first addresses Desrameaux's requests to supplement the summary judgment record and to reopen discovery, and then turns to the merit of Delta's summary judgment motion. For the reasons stated below, the Court denies Desrameaux's requests and grants in part and denies in part Delta's motion.

### I. Desrameaux's Request to Supplement the Summary Judgment Record

As stated above, Desrameaux filed about 70 pages of new documents about three months after Delta had filed its summary judgment motion. The Court may permit her to submit late evidence if the Court "determines that [her] failure to submit such evidence in a timely fashion 'was the result of excusable neglect.'" Davidson v. Scully, 148 F. Supp. 2d 249, 251 (S.D.N.Y. 2001) (quoting Davidson v. Keenan, 740 F.2d 129, 132 (2d Cir. 1984)). After reviewing the submissions, the Court finds that Desrameaux has failed to show excusable neglect. In any event, the documents largely are redundant or irrelevant. The Court denies Desrameaux's request to supplement the record.

### II. Desrameaux's Request to Reopen Discovery

In opposition to Delta's summary judgment motion, Desrameaux asks for a stay to seek additional discovery. Granting such a request is a discretionary judgment. See Alphonse Hotel Corp. v. Tran, 828 F.3d 146, 151 (2d Cir. 2016). In relevant part, Rule 56(d) permits this Court to reopen discovery if Desrameaux "shows by . . . declaration that, for specified reasons, [she] cannot present facts essential to justify [her] opposition" to Delta's motion. The declaration must include (1) "the nature of the uncompleted discovery," (2) "how the facts sought are reasonably expected to create a genuine issue of material fact," (3) "what efforts [Desrameaux] has made to obtain those

facts," and (4) "why those efforts were unsuccessful." Paddington Partners v. Bouchard, 34 F.3d 1132, 1138 (2d Cir. 1994); see also Int'l Union of Operating Eng'rs, Local 17, AFL-CIO v. Union Concrete & Constr. Corp., 147 F. Supp. 3d 202, 211 n.7 (W.D.N.Y. 2015). Even if the declaration satisfies the four requirements, this Court may deny a request for "cumulative" or "speculative" discovery materials, or a request based solely on "bare, generalized assertions." Alphonse Hotel, 828 F.3d at 151–52. Nonetheless, Desrameaux "must be afforded 'a reasonable opportunity to elicit information within the control of [her] adversaries.'" In re Dana Corp., 574 F.3d 129, 149 (2d Cir. 2009) (quoting Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980)). And given the highly technical nature of a summary judgment motion, the Court must construe liberally the Rule 56(d) filings of a pro se litigant such as Desrameaux. Cf. Jackson, 766 F.3d at 195.

In this case, Desrameaux requests from Delta three types of materials: (1) a medical clearance letter provided by Jamaica Hospital to clear her for taking the December 16, 2011, flight; (2) Medina's internal report about Desrameaux's removal from the December 15, 2011, flight; and (3) any materials sufficient to identify the passengers sitting in her row, or the white female passenger who allegedly entered the flight with large bags and without any intervention by Delta's staff.

With respect to the medical clearance letter, Desrameaux has not—and cannot—show how a letter reflecting her mental health during the hospital visit sheds light on what the parties did the day before either at the terminal or in the aircraft. Therefore, the document cannot be "reasonably expected to create a genuine issue of material fact" and fails to satisfy the second requirement. Paddington Partners, 34 F.3d at 1138. In any event, Delta does not possess such a letter. (See D.E # 26 at 3 (Scanlon, M.J.).)

11

The existence of an internal report by Medina is at best speculative. See Alphonse Hotel, 828 F.3d at 151. Desrameaux requested the report on July 1, 2015. (See Brennan Decl., Ex. K at 1 ("Produce all documents: All written . . . pertaining to: Jenny Medina, Delta Performance Leader: a) Witnessing of incidents from inside aircraft and plaintiff was transferred to Jamaica Hospital. . . ." (emphasis in original)).) In response, Delta pointed to its initial disclosures pursuant to Rule 26 of the Federal Rules of Civil Procedure. (See id., Ex. M at 2.) In the initial disclosures, Delta represented that it possessed only three internal reports about Desrameaux: (1) a December 15, 2011, "Aviation Safety Report" completed by Richard Cowart; (2) a December 15, 2011, "FACTS" entry log by an unnamed employee with the identification number 060820800; and (3) a December 8, 2011, passenger history record created by an employee whose initials are "JK" and security identification number is 255421. (Id., Ex. G; see also id., Exs. G-A–C.) Desrameaux has failed to indicate why she believes that Delta nonetheless possesses reports written by Medina. Moreover, the Court could find nothing in the record to suggest that she did. (See also D.E. # 26 at 2 (Scanlon, M.J.) (finding that Delta "has not located any report" by Medina and that "other reports were provided"); Def. Dep. at 108:24–110:8 ("Ms. Medina actually tried to locate any record; she could not. She conducted a search and could not locate any document.").) Without more, the Court sees no reason to delay resolution of Delta's motion.

The Court also denies additional discovery for materials identifying the additional passengers. See Paddington Partners, 34 F.3d at 1138. Testimony from passengers sitting next to Desrameaux likely would not dispute that she stood up, faced the back of the plane, and held up her sign—all of which she has conceded. As the Court will later explain, Delta may react to those actions and properly exercise its considerable discretion under Rule 35 of the relevant contract to remove Desrameaux from the plane. The other passengers' perceptions of the scene would not

show that Delta abused its direction. Therefore, the statements of those passengers would not "create a genuine issue of material fact," as required by Rule 56(d). See Paddington Partners, 34 F.3d at 1138. Desrameaux also fails to show how Delta would be able to determine the white passenger's identity. (See also D.E. # 26 at 3 (Scanlon, M.J.) (finding that Delta "has no information" about the white female passenger).) Accordingly, the Court denies Desrameaux's request to stay the instant motion and reopen discovery.

### III.    Breach of Contract Claims

Reaching the merits, the Court turns first to Desrameaux's breach of contract claims. As stated above, there is no choice-of-law clause in the relevant contract. Accordingly, this Court employs New York's choice-of-law rules in this case. See Rogers v. Grimaldi, 875 F.2d 994, 1002 (2d Cir. 1989). No one questions that New York has "the most significant relationship to the transaction and the parties," and that therefore New York substantive law applies. See Zurich Ins. Co. v. Shearson Lehman Hutton, Inc., 642 N.E.2d 1065, 1068 (N.Y. 1994). To make a breach of contract claim under New York law, Desrameaux must show "(1) the existence of an agreement, (2) adequate performance of the contract by [P]laintiff, (3) breach of contract by [D]efendant, and (4) damages." Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996). No party disputes that the Domestic General Rules Tariff is the relevant agreement.

Desrameaux's pleadings, fairly read, give notice to breach of contract claims based on (1) her removal from the plane (the "removal claim"), and (2) Medina's treatment of her at the terminal (the "baggage claim"). Desrameaux generally alleges that Delta's conduct violates Rule 3 of the contract, which provides that Delta "will use its best efforts to carry the passenger and baggage with reasonable dispatch." (Contract at 3 (emphasis in original).) But as Delta correctly points out, (see Def. Br. at 13–15), specific provisions related to removal (Rule 35) and baggage

procedures (Rule 190) inform the broad introductory provision.[10]  See, e.g., Kolbe v. Tibbetts, 3 N.E.3d 1151, 1156 (N.Y. 2013) ("It is well established that when reviewing a contract, '[p]articular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties manifested thereby.'" (alteration in original) (quoting Riverside S. Planning Corp. v. CRP/Extell Riverside, L.P., 920 N.E.2d 359, 363 (N.Y. 2009))).

## A.    Removal Claim

With respect to the removal claim, the Court grants summary judgment in favor of Delta. Desrameaux fails to show that her removal from the plane constitutes a breach.  Rule 35 provides that "Delta may refuse to transport any passenger, or may remove any passenger from its aircraft, when refusal to transport or removal of the passenger is reasonably necessary in Delta's sole discretion . . . for the comfort or safety of other passengers or Delta employees . . . ."  (Contract at 11 (emphasis added).)  Rule 35 does not require Delta to warn Desrameaux that her conduct may lead to removal.  Moreover, under the rule's plain meaning, Delta holds considerable discretion to determine whether removal is "reasonably necessary" given the circumstances.  See also Topps Co. v. Cadbury Stani S.A.I.C., 526 F.3d 63, 68 (2d Cir. 2008) (noting that a court may grant summary judgment in a contract dispute if "the contractual language on which the moving party's case rests is found to be wholly unambiguous and to convey a definite meaning").  Rule 35 includes many examples of relatively minor annoyances for which Delta "may refuse to transport or may remove passengers."   (Contract at 11 (noting that reasons for removal include, "without limitation," a "disorderly" or "barefoot" passenger; a "malodorous condition"; or "conduct creat[ing] an unreasonable risk of . . . annoyance to other passengers").)

---

[10] Contrary to what Delta suggests, (see Def. Br. at 15), Rule 240 has no application here because it deals with flight delays and cancellations, (see Contract at 42–44).

It is undisputed here that, before liftoff, Desrameaux was holding up a bizarre sign while standing in her row and facing the passengers behind her. Even under her version of the facts, no reasonable juror would distinguish her conduct from being "disorderly" or "malodorous," or from creating an "unreasonable risk of . . . annoyance." (See id.) Accordingly, the Court finds that Desrameaux fails to make a genuine issue of material fact with respect to breach. In light of her undisputed actions, Delta "use[d] its best efforts to carry" her "with reasonable dispatch," (Contract at 3), and reasonably found that it should remove her. Having found no breach of contract, the Court need not consider Delta's other arguments and grants summary judgment with respect to the removal claim.

## B.    Baggage Claim

As for the claim related to her carry-on baggage, the Court denies summary judgment. The Court first notes that neither of the preemption provisions cited by Delta applies to this claim, because 49 U.S.C. § 41713 on its face does not limit breach of contract claims, see Am. Airlines, Inc. v. Wolens, 513 U.S. 219, 228–32 (1995), and because 49 U.S.C. § 44902(b) applies only to claims based on plane removals. (See Def. Br. at 19–23.)

Rule 190, which governs baggage procedures, provides in relevant part that Delta "will accept a maximum of one carry-on item free of charge," if the item "meet[s] the size and weight limits set forth" in the rule and there is "space availability on the aircraft." (Contract at 27–28.) Delta does not dispute that the aircraft had space. The parties dispute whether the luggage satisfied Delta's size limits. But under Desrameaux's version of the facts, she fit her luggage within Delta's size box, revealing to the employees that the luggage may qualify as a carry-on. Nonetheless, according to Desrameaux, Medina temporarily prevented her from bringing the luggage on board.

A jury crediting Desrameaux's story may reasonably find that Delta failed to "use its best efforts to carry" her baggage "with reasonable dispatch." (Contract at 3.)

Delta also fails to show no factual dispute with respect to the third or fourth elements of the breach of contract claim. For purposes of the instant motion, Delta does not seriously dispute that Desrameaux substantially performed her end of the contract. As for the fourth element, Delta does not point to—and the Court has not found—any provisions limiting Desrameaux's ability to recover at least nominal damages from the breach. See, e.g., Kronos, Inc. v. AVX Corp., 612 N.E.2d 289, 292 (N.Y. 1993) ("Nominal damages are always available in breach of contract actions . . . ."). Delta expressly limited the recovery sought for claims based upon the "loss of, damage to, or delay in the delivery" of baggage that was "delivered into Delta's custody." (Contract at 40.) Delta did not limit the recovery for other contract claims based on baggage. In this case, the circumstances here do not implicate loss, damage, or delay in baggage delivery, nor do they implicate baggage already delivered into Delta's custody. Accordingly, the Court denies summary judgment as to the baggage claim.

## IV. Tort Claims

The Complaint stated that Delta caused Desrameaux "severe emotional distress." (D.E. # 1 at 6.) The Court construes the Complaint as asserting claims of intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED"). The Court grants Delta summary judgment as to both claims.

The NIED claims fail because Desrameaux fails to provide any evidence suggesting that Delta "unreasonably endangered [her] own physical safety" or engaged in "special circumstances"—such as misdiagnosing HIV—that create a "[s]pecial likelihood of genuine and serious mental distress." See Baker v. Dorfman, 239 F.3d 415, 421 (2d Cir. 2000).

The IIED claims—which are "highly disfavored" under New York law, Turley v. ISG Lackawanna, Inc., 774 F.3d 140, 158 (2d Cir. 2014)—fail for three reasons. First, no reasonable jury would find that Desrameaux's removal from the plane or the alleged mistreatment she endured at the terminal constitutes conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Chanko v. Am. Broadcasting Cos., 49 N.E.3d 1171, 1178 (N.Y. 2016). Second, Desrameaux fails to establish causation with respect to any claim premised on the involuntary hospitalization. She does not provide any evidence that Delta participated in the decision; the record reveals only that the governmental Port Authority forced her to stay at Jamaica Hospital. (See also Def. Br. at 17–18.) Third, Desrameaux fails to provide any evidence suggesting that Delta had the requisite intent in its actions. See Howell v. N.Y. Post Co., 612 N.E.2d 699, 702 (N.Y. 1993) (requiring, in an IIED claim, evidence of "intent to cause, or disregard of a substantial probability of causing, severe emotional distress"); (see also Def. Br. at 17). Accordingly, the Court need not consider Delta's other arguments and grants the summary judgment motion with respect to the tort claims.

## V.     Leave to Amend

Finally, Desrameaux in her opposing declaration appears to testify to facts implicating race-based claims. The Court now considers whether she may pursue those claims. In general, a claim "must be set forth in the pleadings, in order to give [D]efendant[] fair notice of the nature of [P]laintiff's claim." Thomas v. Egan, 1 F. App'x 52, 54 (2d Cir. 2001). In the Complaint, she asserted only claims of "breach of contract" and of "severe emotional distress." (D.E. # 1 at 6.) The Court has addressed those claims above. Desrameaux now asserts that the race-based claims

were fairly stated when she asserted that Delta's employees treated "no other passenger[]" like her. (See Pl. Decl. ¶ 114; see also D.E. # 1 at 5.)

The Court disagrees. Without any indication or suggestion of race in the Complaint, the mere assertion of "no other passenger[]" receiving the same treatment does not fairly hint at a race-based claim. At most, the pleading suggests irrational "class of one" discrimination, cf. Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (claim under 42 U.S.C. § 1983)—misconduct that does not give rise to a claim against a private party. Therefore, the Court finds that the Complaint did not fairly present race-based claims.

The Court must further address whether Desrameaux may amend her Complaint to include the race-based claim. Although the Court may deem a pro se litigant to have abandoned claims raised for the first time in opposition to a summary judgment motion, see Oyewo v. Lahood, 515 F. App'x 10, 11 (2d Cir. 2013), Desrameaux here argues that she introduced the race-based claims earlier in the litigation. Construed liberally, her papers indicate that Delta had notice of the race-based claims as late as April 8, 2015, when the Honorable Cheryl Pollak, United States Magistrate Judge,[11] held an initial discovery conference for this case. (Pl. Reply at 4.)

A review of the party's statements during the conference confirms Desrameaux's contention. Before Magistrate Judge Pollak and Delta, Desrameaux, who is black, stated that she had seen a "slim, tall, Caucasian female with a bag much bigger than mine measuring approximately feet long [sic] and one and a half foot of diameter." (D.E. # 48 at 6:14–17; see also id. at 13:14–18.) Desrameaux stated that Medina had "let [the woman] in without any interruption," causing Desrameaux to ask, "'Why you don't stop her from entering the gate? Her

---

[11] Initially filed in Central Islip, the instant action was assigned to the Honorable Joanna Seybert, United States District Judge, and the Honorable Gary R. Brown, United States Magistrate Judge. (See D.E. # 3; D.E. dated Jan. 30, 2015.) On January 30, 2015, the action was reassigned to this Court and Magistrate Judge Pollak. (D.E. dated Jan. 30, 2015.) On August 3, 2015, Magistrate Judge Scanlon took over for Magistrate Judge Pollak. (D.E. dated Aug. 3, 2015.)

bag[,] it's much bigger than mine. Your policy has to be the same for everybody.'" (D.E. # 48 at 6:18–21.) Desrameaux also stated that Medina had "threatened" her in response: "She replied, 'If you don't stop talking, you are not traveling today.'" (Id. at 6:21–22.) Based on Desrameaux's statements, Magistrate Judge Pollak asked Delta's counsel: "[H]ave you focused on that aspect of her case, which seems to be actually the more salient issue here, was she treated differently than other—I'm assuming it's a race-based claim, so other than white individuals with respect to her carry-on?" (Id. at 12:7–12 (emphasis in original).) Delta's counsel responded that "to the extent there's this other claim of discriminating treatment, we are aware of no evidence of that at all." (Id. at 13:11–13.)

Even at the summary judgment phase, the Court may entertain an amendment to the pleadings. See Thomas, 1 F. App'x at 54. The Court construes Desrameaux's opposing declaration as a request for leave to amend. "The [C]ourt should freely" grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Court should consider factors such as "undue delay," "bad faith," Desrameaux's "dilatory motive," "undue prejudice" to Delta, and the "futility of amendment." Foman v. Davis, 371 U.S. 178, 182 (1962). Here, the Court finds no bad faith, undue delay, or undue prejudice in this case. A review of discovery shows that Desrameaux, largely proceeding pro se,[12] actively has been seeking the identity of the white female passenger, and that Delta was repeatedly asked about the passenger. In light of the pleading that "no other passenger[]" was similarly treated, Desrameaux's statements at the initial discovery conference fairly suggested to Delta that race was a factor in the case. Indeed, Magistrate Judge Pollak perceived a "race-based claim." (D.E. # 48 at 12:7–12.) Moreover, Delta recognized the

---

[12] The summary judgment briefing shows that Desrameaux has been receiving help from the Federal Pro Se Legal Assistance Project of the City Bar Justice Center. The Court encourages Desrameaux, if she desires, to continue seeking help from the program.

possibility of federal claims early in the litigation, because it argued in its notice of removal that this Court had not only diversity but also federal question jurisdiction over this action. (See D.E. # 1 at 1.)

Finally, the Court finds that amendment is not futile, because a jury reasonably may find that Delta violated 42 U.S.C. § 1981.[13] Section 1981 "prohibits discrimination on the basis of race . . . ." Vill. of Freeport v. Barrella, 814 F.3d 594, 606–07 (2d Cir. 2016). The statute provides in relevant part that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). The provision applies to private and public contracts, see St. Francis Coll. v. Al-Khazraji, 481 U.S. 604, 609 (1987), and targets conduct related to contract performance, see CBOCS W., Inc. v. Humphries, 553 U.S. 442, 449 (2008); see also 42 U.S.C. § 1981(b) (noting that § 1981 applies to "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship").

To prove a § 1981 claim, Desrameaux "must show that the discrimination was intentional," Patterson v. Cty. of Oneida, 375 F.3d 206, 226 (2d Cir. 2004), and "that the discrimination was a 'substantial or motivating factor' for the defendant's actions," Tolbert v. Queens Coll., 242 F.3d 58, 69 (2d Cir. 2001) (internal quotation marks omitted) (quoting Gierlinger v. Gleason, 160 F.3d 858, 868 (2d Cir. 1998)). "A finding of discriminatory intent is a finding of fact, as are findings

---

[13] Delta has no statute-of-limitations defense because the amendment would relate back to the original pleadings, see Fed. R. Civ. P. 15(c)(1)(B) (permitting relation back when "the amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out—or attempted to set out—in the original pleading"), which Desrameaux filed within the four-year limitations period for § 1981 claims, see Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 383 (2004).

Moreover, the preemption provision 49 U.S.C. § 41713 does not apply because it targets only laws enacted by "a State, political subdivision of a State, or political authority of 2 or more States." 49 U.S.C. § 41713(b)(1). And 49 U.S.C. § 44902(b) does not preempt federal civil-rights claims. See, e.g., Mercer v. Sw. Airlines Co., No. 13-CV-5057 (MEJ), 2014 WL 7206881, at *4 (N.D. Cal. Dec. 18, 2014); Bayaa v. United Airlines, Inc., 249 F. Supp. 2d 1198, 1205 (C.D. Cal. 2002).

of discrimination and causation." Id. (citations omitted). And "an invidious discriminatory purpose may often by inferred from the totality of the relevant facts . . . ." Washington v. Davis, 426 U.S. 229, 242 (1976). Under § 1981, Desrameaux may seek nominal or actual damages and— if Delta's conduct indicates an "evil motive or intent" or "reckless or callous indifference" to violating the law—punitive damages. Tolbert, 242 F.3d at 74, 77.

Because the summary judgment record does not include any "direct evidence of discrimination," Desrameaux "must proceed under the well-established burden-shifting framework the Supreme Court developed in" McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Aboeid v. Saudi Arabian Airlines Corp., 959 F. Supp. 2d 300, 309 (E.D.N.Y. 2013), aff'd, 566 F. App'x 34 (2d Cir. 2014). Desrameaux "must first establish a prima facie case." Id. If she does, Delta must "articulate some legitimate nondiscriminatory reason" for the acts. Id. The Court may not assess the credibility of the reason. Id. If Delta satisfies its burden, Desrameaux must show that its "reason is false," and that "the actual reason for the delay was intentional discrimination." Id.

The record provides enough for a reasonable jury to find a § 1981 claim based on Medina's alleged conduct at the terminal.[14] Desrameaux, who is black, has made an unrebutted declaration that Delta employees permitted a white female passenger with an oversize bag to board the plane without hassle, while they told her to pay $25 or abandon her baggage. If jury members were to

---

[14] However, the record does not provide for a § 1981 claim based on the plane removal. Desrameaux fails to make any showing that her removal from the plane was race-based. The only evidence is her declaration statement that the removal involved "animus on the basis of [her] race and/or national origin." (See Pl. Decl. ¶ 85.) However, such a statement is conclusory and does not create a genuine issue of material fact. See, e.g., Davis v. New York, 316 F.3d 93, 100 (2d Cir. 2002). Accordingly, the summary judgment record fails to establish a race-based removal. Allowing Desrameaux to pursue the theory would require reopening discovery, which would unduly prejudice Delta. Therefore, she may not add a § 1981 claim based on the removal.

For a similar reason, the Court denies Desrameaux leave to add a breach of contract claim premised on Rule 35's prohibition against "refu[sing] to provide transportation based upon race . . . ." (See Contract at 11.)

credit Desrameaux's testimony, they could find that Medina prevented her from fully "enjoy[ing] all benefits, privileges, terms, and conditions" of the Domestic General Rules Tariff—in particular, the carrying of her luggage. See 42 U.S.C. § 1981(b). The jury could also find that Delta did not obstruct the white female passenger's ability to enjoy her contract and board the plane with substantially similar luggage. Desrameaux makes a prima facie showing of discriminatory intent when, as here, she shows that she was "singled out of unlawful oppression in contrast to others similarly situated." Albert v. Carovano, 851 F.2d 561, 573 (2d Cir. 1988) (en banc) (emphasis in original) (internal quotation marks and alteration omitted); see also, e.g., Bary v. Delta Airlines, Inc., No. 02-CV-5202 (DGT), 2009 WL 360499, at *9 (E.D.N.Y. Oct. 9, 2009).

Delta attempts to cast Desrameaux's baggage as oversize, which would violate a contractual requirement for carry-on luggage and would provide a nondiscriminatory reason for preventing her from boarding with it. (See Def. Br. at 11 ("Ms. Medina testified that, she specifically remembers Plaintiff's bag did not fit into the sizing mechanism.").) However, Desrameaux says she proved to the Delta employees that the carry-on conformed to Delta's size requirements. According to her, Desrameaux fit the luggage into a Delta size box. Nonetheless, Medina continued to prevent her from boarding with the bag. If jurors were to credit Desrameaux's testimony, they reasonably might disbelieve Delta's nondiscriminatory reason. Such disbelief and the prima facie showing "permit the trier of fact to infer the ultimate fact of intentional discrimination." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510 (1993) (emphasis in original).

Accordingly, the current summary judgment record provides sufficient evidence for a jury to find a § 1981 violation relating to Desrameaux's baggage. Amendment to include the § 1981 claim is not futile and will conform the pleadings to the record as it has developed during

discovery. In light of the Foman factors, the Court finds that "justice . . . requires" her leave to amend. Fed. R. Civ. P. 15(a)(2).

## VI.    Appointment of Counsel

Because Desrameaux survives the instant dispositive motion, the Court sua sponte raises the issue of appointment of pro bono counsel. At the start of discovery, on May 8, 2015, Desrameaux filed an application for counsel with Magistrate Judge Pollak. (D.E. # 11.) On August 3, 2015, the action was transferred to Magistrate Judge Scanlon, (D.E. dated Aug. 3, 2015), who issued an order denying Desrameaux's application without prejudice on November 30, 2015, (D.E. # 21). Magistrate Judge Scanlon found that Desrameaux "is unable to afford counsel," but that her "claims do not seem to be of substance, and her chances of success are exceedingly slim." (D.E. # 21 at 7.)

The Court "may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). "Broad discretion lies with the district judge in deciding whether to appoint counsel pursuant to this provision." Hodge v. Police Officers, 802 F.2d 58, 60 (2d Cir. 1986). Still, the Court "should first determine," as a threshold requirement, whether Desrameaux's "position seems likely to be of substance." Id. at 61. If yes, the Court

> should then consider [her] ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, [her] ability to present the case, the complexity of the legal issues[,] and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

Id. at 61–62.

Now that discovery has concluded, it is clear to the Court that Desrameax's position has "some merit." Barrington v. New York, 806 F. Supp. 2d 730, 751 (S.D.N.Y. 2011); see also Johnston v. Maha, 606 F.3d 39, 41 (2d Cir. 2010) (requiring only "some likelihood of merit"). She

need not make a "prima facie showing" or even "survive a dispositive motion," see Ferrelli v. River Manor Health Care Ctr., 323 F.3d 196, 204 (2d Cir. 2003), yet she did both here. Desrameaux made a prima facie showing of racial discrimination and contract breach by providing concrete factual allegations: that Medina delayed her bringing on her carry-on baggage, that she witnessed Medina treat a similarly situated white passenger's luggage more favorably, and that Medina continued to mistreat her despite a showing that her bag satisfied Delta's size requirements. Accordingly, Desrameaux has not made "mere bald assertions" that "technically . . . suffice to avert summary judgment" but otherwise disentitle her to pro bono counsel. Hodge, 802 F.2d at 60.

The Court accordingly turns to the other Hodge factors. The Court recognizes that Desrameaux no longer needs help investigating facts, and that the legal issues in this case are not complex. However, the Court finds that the trial likely will center on the testimonies of dueling witnesses (Medina and Desrameaux), and that counsel would be exceedingly helpful in such circumstances. As the Second Circuit has advised, "[i]f a case's factual issues turn on credibility, this should weigh on the side of appointing counsel since 'it is more likely that the truth will be exposed where both sides are represented by those trained in the presentation of evidence and in cross-examination.'" Hodge, 802 F.2d at 61 (quoting Maclin v. Freake, 650 F.2d 885, 888 (7th Cir. 1981) (per curiam)).

Moreover, the Court has reviewed the filings Desrameaux has made with and without the aid of the Federal Pro Se Legal Assistance Project, and the Court finds that it likely would be difficult for her to present the case by herself. For instance, Desrameaux's request for supplementing the summary judgment record—which she apparently wrote without assistance— reveals that she has filed several irrelevant grievances in other states, and that she wants

24

nonetheless to focus on them in this action. The Court has serious concerns that Desrameaux would not be able independently to isolate and present the relevant issues; indeed, Desrameaux may have difficulty even separating the evidence related to the baggage claims from that related to the plane removal. Therefore, having counsel handle the trial will more "likely to lead to a just determination." Id. at 62.

Given the totality of circumstances, the Court would be inclined to request an attorney if Desrameaux properly files another application.[15] See also Barrington, 806 F. Supp. 2d at 751. The Court invites her to make the request no later than April 5, 2018.

## CONCLUSION

For the foregoing reasons, the Court DENIES Desrameaux's request to reopen discovery and DENIES her application to supplement the summary judgment record. The Court GRANTS IN PART and DENIES IN PART Delta's summary judgment motion. The Court grants summary judgment with respect to Desrameaux's tort claims. The Court also grants summary judgment with respect to the breach of contract claim premised on her removal from her December 15, 2011, flight. However, the Court denies summary judgment as to the breach of contract claim related to the treatment of Desrameaux's carry-on luggage.

The Court also GRANTS Desrameaux LEAVE TO AMEND her Complaint and add only the § 1981 claim related to the luggage treatment. The Court DIRECTS her to file the Amended Complaint no later than April 5, 2018. If Desrameaux fails to amend the Complaint, then she may not pursue the § 1981 claim in this action.

In addition, the Court invites Desrameaux to file a request for pro bono counsel no later than April 5, 2018.

---

[15] Of course, Desrameaux must again demonstrate that she is "unable to afford counsel." 28 U.S.C. § 1915(e)(1).

Finally, the Court ORDERS the parties to file a proposed joint pretrial order no later than April 26, 2018. The Court respectfully REFERS the proposed order to Magistrate Judge Scanlon for review.

SO ORDERED.

Dated: March 8, 2018
      Brooklyn, New York

                                      s/Carol Bagley Amon
                                      Carol Bagley Amon
                                      United States District Judge