1  UNITED STATES DISTRICT COURT
   EASTERN DISTRICT OF NEW YORK
2
   ------------------------------x
3                                    15-CV-347(CBA)
   RUTH ABIGAIL DESRAMEAUX,
4                                    United States Courthouse
           Plaintiff,               Brooklyn, New York
5
           - versus -               May 10, 2019
6                                    3:00 p.m.
   DELTA AIRLINES INC.,
7
           Defendant.
8
   ------------------------------x
9
        TRANSCRIPT OF CIVIL CAUSE FOR PRETRIAL CONFERENCE
10            BEFORE THE HONORABLE CAROL B. AMON
               UNITED STATES DISTRICT JUDGE
11

12  APPEARANCES

13  Attorney for Plaintiff:   SELENDY & GAY PLLC
                              1290 Avenue of the Americas
14                            New York, New York 10104
                              BY:  OSCAR SHINE, ESQ.
15                                 MEGAN LARKIN, ESQ.
                                   ANDREW R. DUNLAP, ESQ.
16

17
    Attorney for Defendant:   RYAN & BRENNAN LLP
18                            131 Tulip Avenue
                              Floral Park, New York 11001
19                            BY:  JOHN O. BRENNAN, ESQ.

20

21  Court Reporter:           LINDA D. DANELCZYK, RPR, CSR, CCR
                              Phone:  718-613-2330
22                            Fax:  718-804-2712
                              Email:  LindaDan226@gmail.com
23

24

25  Proceedings recorded by mechanical stenography.  Transcript
    produced by computer-aided transcription.

1          (In open court.)

2          THE LAW CLERK:  Docket Number 15-CV-347, Desrameaux

3    versus Delta Airlines on for a pretrial conference.

4          THE COURT:  All right, will are the parties state

5    their appearances, please.  For the plaintiff?

6          MS. LARKIN:  Megan Larkin of Selendy & Gay for the

7    plaintiff, Ruth Desrameaux.

8          MR. DUNLAP:  Andrew Dunlap.

9          MR. SHINE:  Oscar Shine.

10         THE COURT:  All right.  Good afternoon.

11         MR. BRENNAN:  Good afternoon, Your Honor.  John

12   Brennan from Ryan Brennan & Donnelly for the defendant, Delta

13   Airlines.

14         THE COURT:  All right, good afternoon.  Please be

15   seated.

16         I think there are a couple of outstanding issues

17   with respect to some exhibits.  And Exhibit ND, which was

18   referred to the "To Whom It May Concern letter" was written by

19   the plaintiff on May 7th, 2015, explaining that the event

20   giving rise to lawsuit was not an isolated one of

21   discrimination but continuity or a continuation, rather, of

22   what had been happening since 2004, and the letter goes on to

23   explain some of the discrimination she's experienced in the

24   past.

25         At the last conference, counsel for Delta indicated

1    it goes to her state of mind, it goes to the terms of her life

2    experience as she come to the gate, however, I believe that

3    counsel for plaintiff's response to this argument is correct

4    in that counsel argued a discrimination claim is an objective

5    standard and so whether or not she's overly sensitive doesn't

6    really have any bearing on the claim.

7         Delta is making an argument that it goes to her

8    credibility because she -- you shouldn't value or shouldn't

9    find credible her characterizations at the events at the gate

10   because she has a history of complaining about discrimination.

11        First of all, as an initial matter, if it's being

12   used for impeachment it's intrinsic evidence so it couldn't be

13   offered for that purpose.  But the question remains whether

14   she can be cross-examined about the content.

15        And there's no showing here that it affects her

16   credibility in that no showing that this past discrimination

17   never happened or that she's lied in the past about

18   discrimination.  I think that would be relevant.

19        But if, in fact, as she claims she was discriminated

20   against, her allegations don't go towards her credibility, and

21   there's no showing that these allegations are false.  So,

22   really, I think what we have is just cross-examining her about

23   her litigiousness which is not an appropriate subject of

24   inquiry.

25        And I think the same is true with the prior

1   lawsuits.  There's no showing that any of these were thrown

2   out, or that she lied about any of the circumstances in the

3   prior claims.  I mean, certainly it would be entirely relevant

4   to her cross-examination if it could be shown that she had

5   made false claims of discrimination in the past but, no one

6   can -- that's not being proved, so that analysis goes to

7   why -- I believe that is DXJ is not admissible.

8           Defendant's D, it's a little bit of a different

9   situation.

10          I don't think it is as plaintiffs claim improper

11  impeachment by third party notes under *Almonte*.  I don't think

12  that's the theory that it's being offered.

13          It seems to me that it is a statement of an agent,

14  because it's a statement -- it appears to be a statement of

15  someone who she got to be an attorney of hers.  I think she

16  can be asked, appropriately, whether she asked an attorney to

17  complain about what happened at the airport and whether, in

18  fact, she told that attorney about this claim she has now for

19  discrimination.

20          So I think inquiry can be made of her about this

21  letter.  I would have somewhat -- some concern about it coming

22  in -- it might come in in redacted form.  I'm a little bit

23  concerned whether it's prejudicial to plaintiff about her

24  being taken to the hospital without authorization.

25          So perhaps if it could be admitted in some form -- I

1   mean if she admits to the fact that a complaint was made on

2   her behalf and she didn't say anything about the

3   discrimination claim, then I think that would be the end of

4   it.  If she admits it, we don't need the letter.

5           But to the extent that the letter is coming in as an

6   attorney's agent statements, which would not be hearsay,

7   perhaps the parties could agree on some form of redaction if

8   they believe it's prejudicial to her to be taking about going

9   to Jamaica hospital about her authorization.

10          I take it that's what plaintiff is concerned about

11  in that letter?

12          MS. LARKIN:  Your Honor, may I have a moment to

13  confer?

14          THE COURT:  Yes.  Sure.

15          (Pause.)

16          MS. LARKIN:  Your Honor, we would propose that the

17  sentence that begins with "rather" and ends with

18  "authorization" be redacted.  If that's redacted, we would be

19  okay with the letter.

20          THE COURT:  I take it the defense doesn't have any

21  objection to that, right?

22          MR. BRENNAN:  I can't find what plaintiff's

23  proposing.

24          THE COURT:  The sentence -- second paragraph the

25  sentence begins with "rather" until the end of paragraph; is

1   that right?  Or until "authorization".

2                    MS. LARKIN:  Right.

3                    THE COURT:  Authorization.

4                    And then that there could be a stipulation that that

5   redacted statement does not refer to her claim for

6   discrimination.

7                    In other words, the whole point of this is that she

8   didn't say anything about discrimination.  But we can say that

9   that -- we can have some sort of stipulation that the material

10  there, that it's redacted, does not relate to her claim for

11  discrimination and it's just not relevant to the proceedings,

12  that's why it's been redacted.

13                   So, counsel, if you want to prepare an exhibit with

14  that sentence redacted.

15                   MR. BRENNAN:  Your Honor, may we say we don't want

16  to have the document redacted.  We feel it's appropriate in

17  its entire form.

18                   THE COURT:  What's the problem with it?  We're

19  trying to get away from what happened after her complain about

20  going to the hospital and all of that.  So why do we need that

21  statement there.  As long as we get a concession that what is

22  redacted is not relevant to the proceedings and it is not --

23  does not contain a complaint about discrimination in bag

24  handling.

25                   In other words, the whole point of you bringing out

1    this letter is to prove that an attorney came, made a

2    complaint to Delta Airlines, and guess what, he didn't mention

3    this business about her and the bag and being the victim of

4    discrimination with her carry on.

5                Redacting that sentence doesn't in any way interfere

6    with your ability to make that argument.

7                MR. BRENNAN:  Well, it would be defense's position

8    it would be taken as though that was a material -- that was

9    removed perhaps and had something to do with it.  Regardless

10   of an instruction on it, that would be our concern.

11               THE COURT:  That the jury is going to think that I'm

12   lying to them?

13               MR. BRENNAN:  No, Your Honor, I'm not saying that.

14   I'm not saying that.

15               But I'm just saying what would be normal potentially

16   of jurors is to look at that and see something removed and

17   think that that is what is in the removal.

18               No way am I suggesting, Your Honor, that the jury's

19   going to think that you're lying to them.  I'm not saying

20   that.

21               THE COURT:  Well, you generally, in many areas of

22   the law, the ruling or understanding is the jurors will follow

23   the instructions of the Court.  When we have similar act

24   testimony in a criminal case or even in a civil case, the

25   Court admits the testimony, which can often be somewhat

1    prejudicial, but it admits the testimony with a limiting

2    instruction.  And it's presumed the jurors follow the Court's

3    limiting instruction.

4           So I think the same presumption applies here.  I

5    think that we have assiduously tried to stay away from, in

6    this case, all that went on when she got on the plane for the

7    purposes of narrowing and focusing this case.  And by leaving

8    this sentence in, it just pulls us right back into the whole

9    area that we've made efforts to not explore.

10          MR. BRENNAN:  Your Honor --

11          THE COURT:  But your objection is noted.

12          MR. BRENNAN:  Your Honor, in that regard, that's

13   another concern of ours; is that we are not of a mind that

14   everything that happens after the gate should not be part of

15   this case.

16          THE COURT:  Well, I know, but I've ruled on that,

17   and we're not having a do-over.

18          MR. BRENNAN:  Your Honor, respectfully, in terms of

19   information about taking a sign out on the plane --

20          THE COURT:  We've been through this.  I said "No".

21          MR. BRENNAN:  Your Honor, I'm sorry, I don't recall

22   your ruling in that regard where you excluded everything after

23   the gate.  I don't remember that at all.  I'm sorry.  I don't

24   remember that.

25          (Discussion was had off the record.)

1        (Conference between the Judge and the law clerk.)

2        THE COURT:  Well, I just seem to be repeating

3   myself, because we have a transcript of the last proceedings

4   here.  The conversation I just had with you is the identical

5   conversation I had at our last proceedings.

6        MR. BRENNAN:  Your Honor, I do have a copy of the

7   transcript of the last proceedings, and I don't have an

8   understanding from the last proceedings, looking at the

9   transcript and being present, that Your Honor said there will

10  be no discussions, no evidence, no questions, nothing to do

11  with what happened after the gate.

12        It's the defendant's position it's intricately

13  involved in these claims.  The plaintiff had a sign in her

14  bag.  She was upset about being purportedly delayed to get on

15  the plane.

16        Perhaps what is going on here is she had an

17  intention of just getting on that plane with that bag to show

18  her side all along, and that's what it was all about.  Not

19  anything to do with the breach of contract, not anything to do

20  with the racial discrimination claim.  It's absolutely our

21  position it's all part of it.

22        To be put in a box where it's basically all that

23  occurs is simply when she's at the gate and nothing more and

24  there's nothing else in the trial, it's our position it

25  wouldn't be fair to defendant, we would be prejudiced.  This

1   is absolutely part of her claims, and it would be artificial

2   for a jury --

3           THE COURT:  It's not one of her claims because I've

4   ruled she has no claim with respect to that.  That was a prior

5   ruling.

6           MR. BRENNAN:  It's part of her claims in the sense

7   of what she's claiming as far as racial discrimination.

8           THE COURT:  No, she's --

9           MR. BRENNAN:  She's claiming racial discrimination.

10          THE COURT:  The only claim that I let stand in this

11  case was her claim that she wasn't allowed to take her bag on

12  the plane, or a white woman with the identical kind of bag

13  came on and let that bag go on the plane.  And that's the

14  claim that I allowed them to have.

15          And I said -- just reread the transcript of the last

16  proceedings again, because I don't want to repeat myself.

17          I basically said to the extent you can bring out

18  that she -- about getting on the plane, you can bring out that

19  she ultimately got on the plane and was allowed to take her

20  bag on.  That's what I said the last time.

21          MR. BRENNAN:  Your Honor, there was nothing from

22  last time, I'm missing where you said we can't bring up the

23  sign.  This is her document she created.

24          THE COURT:  Well, I just -- I just --

25          MR. BRENNAN:  It's in her bag.  It's a

1   contemporaneous --

2              THE COURT:  I just ruled on the sign.

3              Well, if it wasn't clear before, it should be clear

4   now.  I'm not allowing any statement about the sign, or

5   introduction of the sign into evidence.

6              MR. BRENNAN:  Your Honor, defendant would strongly

7   note --

8              THE COURT:  I don't care how strongly you object.

9              MR. BRENNAN:  -- our exception to it.

10             THE COURT:  I understand you have an exception to

11  it.  I've ruled.  You know, the shortness of life requires

12  that we move on.

13             MR. BRENNAN:  Your Honor, I'm sorry, because that --

14  that specific of a directive was not --

15             THE COURT:  Well, it is now.

16             MR. BRENNAN:  And, Your Honor, we note our

17  exception.  It would be unduly prejudiced to have this case

18  only about what occurred at the gate and not to have to

19  address the other parts of the case which are part of what

20  happened at the gate and her claim of racial discrimination.

21             THE COURT:  Your exception is noted.

22             MR. BRENNAN:  Thank you, Your Honor.

23             THE COURT:  Okay, I don't think that -- I don't

24  think that there's anything else that's outstanding.

25             Within like the next week, I will put my proposed

1   jury instructions as a draft on the docket and you can then --

2   if you have any objections to them, then you can make those

3   objections known.

4          But is there anything else that the parties believe

5   is outstanding that hasn't been addressed?

6          MS. LARKIN:  Your Honor, at this point Delta has not

7   informed us what witnesses it intends to call at trial and we

8   would ask --

9          THE COURT:  It's not in the pretrial order?

10          MS. LARKIN:  The current section of Delta's pretrial

11   order was the section submitted in November, and that reflects

12   all of the witnesses including those that are only involved in

13   post-boarding events.

14          THE COURT:  So what's your question?

15          MS. LARKIN:  We would ask --

16          THE COURT:  Specifically what witnesses?

17          MS. LARKIN:  That's right.

18          THE COURT:  Is this for the purpose of you're having

19   someone here if they don't have them here?

20          Who are the witnesses, Counsel, that you intend to

21   call?

22          MR. BRENNAN:  Your Honor, right now the witnesses

23   would be Tiffany Flores, Jenny Medina, and the two Port

24   Authority police officers.

25          THE COURT:  Okay.

1      MR. BRENNAN:  And obviously Ruth Desrameaux, the

2  plaintiff.

3      MS. LARKIN:  We don't believe that the Port

4  Authority officers have any relevance to this, to any of the

5  claims for the reasons that you already ruled, which is they

6  are only relevant to post-boarding events.

7      MR. BRENNAN:  Your Honor, our position is they're

8  relevant in terms of -- again, our position is that that's

9  part of it.

10      We come in, and I'm saying in good faith, Your

11  Honor, not having an understanding from last occasion that

12  everything at the gate, and that's it, was going to be dealt

13  with at the trial, there was going to be nothing after the

14  gate.

15      So we, in good faith, have indicated that all along

16  Port Authority police officers who responded to the scene, who

17  dealt with the plaintiff, who saw her sign, and had to remove

18  her from the plane, that was a part of it.  They generated

19  documents as well, which are part of the proposed exhibits we

20  had offered.

21      THE COURT:  Exhibits that haven't been ruled on?

22      MR. BRENNAN:  I don't believe they were

23  specifically, but...

24      THE COURT:  My ruling, it seems, covers their

25  testimony that the testimony that you have articulated that

1    they would present does not seem to be relevant.

2              That's not to say that you shouldn't have them on

3    hold for some reason.  The possibility exists that she could

4    say something during her testimony that they might be able to

5    rebut.  I don't know that, so.

6              But just the testimony about the sign and all of

7    that, I wouldn't permit their testimony.  But I can't say to

8    you that you shouldn't have them available in case something

9    that she says they might have some relevant testimony to

10   contradict.  So I wouldn't want to tell you now don't have

11   those people available.  But I'm not inclined to allow you to

12   present testimony.

13             But her sign, you know, how she was acting at that

14   point in time, if that's the purpose of they're coming but,

15   again, I don't want to put you in a position where you have to

16   call someone and they may have something to say to impeach

17   something she might say on the stand.

18             I can't know everything that will happen at a trial.

19   So that's the best I can say about that.

20             But you know who the other witnesses are, so is

21   there anything else that the plaintiffs have a concern about?

22             MS. LARKIN:  Not a concern, just some housekeeping

23   things.

24             THE COURT:  Okay, what's that?

25             MS. LARKIN:  Just wondering if you will -- when you

1    will tell us the trial clock?

2              THE COURT:  You mean when we're starting and when

3    we're ending?

4              MS. LARKIN:  How much time will be allotted to each

5    segment.  Is that something that you do?

6              THE COURT:  I don't do that.

7              MS. LARKIN:  Okay.

8              And then we would like for -- we'd like to be able

9    to bring in phones and laptops to trial, and we prepared a

10   draft proposed order.

11             THE COURT:  I think they let lawyers bring in

12   laptops.

13             MS. LARKIN:  Not paralegals.  And lawyers have to

14   have a secure pass.

15             THE COURT:  You don't have a pass?

16             MS. LARKIN:  I don't.

17             THE COURT:  Can you get one?

18             MS. LARKIN:  I don't think in time, but I can figure

19   something out, if Your Honor would like that.

20             THE COURT:  I mean I never have a problem with

21   lawyers bringing in laptops and phones, so I don't know.

22             I mean, if you have some problems -- have you had

23   problems bringing in laptops and phones before?

24             MS. LARKIN:  It's been inconsistent.  Today I had no

25   issue with it.  Last time, they took my phone.

1    THE COURT:  They always let -- oh, you don't have a

2    pass.

3    MS. LARKIN:  I don't have a pass.  I usually show

4    them my business card and that works.  Sometimes.

5    THE COURT:  Well, why don't you --

6    MS. LARKIN:  And also the paralegals, who will have

7    some of our electronic equipment helping us with that.

8    THE COURT:  You'll be with them.  Take it from them.

9    Hold it yourself.

10    MS. LARKIN:  Okay.

11    THE COURT:  I don't think I should have to sign an

12    order, but let me know if you have any problem.

13    MS. LARKIN:  Okay, thank you.

14    THE COURT:  Counsel?

15    MR. BRENNAN:  Your Honor, just a couple of quick

16    things.

17    You mentioned at the outset today, and I didn't hear

18    the exhibit identifications that you were making --

19    THE COURT:  Yes.

20    MR. BRENNAN:  -- on two.

21    If you could just clarify what those two exhibits

22    were?

23    THE COURT:  Yes.

24    One of them was Defendant's Exhibit N-D.

25    And the other one was a portion of exhibit

1   Defendant's Exhibit 5, that will be the claims, the other

2   claims of discrimination.

3            And J -- I'm sorry, it's a J not a 5, Defendant's

4   Exhibit J.

5            And then the Defendant's Exhibit D was the other one

6   I'm referring to.

7            MR. BRENNAN:  If we're able to, Your Honor, we would

8   like note our exceptions to your rulings on the first two

9   exhibits you were mentioning --

10           THE COURT:  Okay.

11           MR. BRENNAN:  -- this afternoon.

12           THE COURT:  Sure.

13           MR. BRENNAN:  And then as far as -- did I understand

14  Your Honor said as far as objections to the jury instructions,

15  we would be able to do that after they're filed by Your Honor?

16           THE COURT:  Yes, I'll file a set.  I've looked at

17  both of yours, I'll file a set on ECF.

18           I'll denominate a draft, and if you have problems

19  with anything that I've said, you can raise that.

20           MR. BRENNAN:  I mean in a general way, we feel the

21  terms of the breach of contract claim, they're asserting

22  emotional damages only.  We don't think that's really

23  appropriate.

24           They're being clear about the fact that there's no

25  monetary damages, and traditionally that would be the only

1   thing that would be available on a breach of contract claim.

2   So if there is none, we would think that breach of contract

3   claim shouldn't even be part of the case.

4           And the fact that there's already been ruling by

5   Your Honor on motion for summary judgment of no intentional

6   acts, we feel that any kind of punitive damage charge would

7   not be appropriate on a racial discrimination case because

8   it's out of the case.  There's nothing to support that.

9           So that would also be part of it.  But, Your Honor,

10  if you said that we can assert those at trial, we will reserve

11  our rights to do that.

12          THE COURT:  Okay.  Fine.

13          Why are you entitled to a punitive damage claim on

14  this?  Because if, in fact, the jury were to believe that they

15  intentionally discriminated against her based on race, is that

16  what establishes a claim?

17          MS. LARKIN:  Yes, Your Honor, that if they used

18  reckless or callous disregard in their conduct toward her.

19          THE COURT:  Okay.

20          All right.  So I'll put those on the docket, and

21  then you can -- what date does the trial start?

22          THE LAW CLERK:  The 28th.

23          THE COURT:  Of May?

24          I'd ask you to file your objections a week after I

25  put posted the jury instructions, okay?

1          All right.  I'll see you in May then.  It is May.

2    I'll see you on May 28th.

3          And any objection to *voir dire*, make to the

4    magistrate.  Judge Bulsara, I believe, has been assigned.

5          I think Judge Bulsara will probably put something up

6    on the docket sheet.  He's the magistrate judge.  He's going

7    to pick the jury.  I just don't -- I just thought about that.

8          MS. LARKIN:  Your Honor, would you like us to

9    pre-mark exhibits after this conference per your individual

10   rules?

11         THE COURT:  I thought you already did that in the

12   pretrial order.

13         MR. BRENNAN:  We submitted the book.

14         MS. LARKIN:  It doesn't reflect any of the rulings.

15   It doesn't even --

16         THE COURT:  You don't have to remark them.  Just

17   leave the same markings that you have on them now.

18         MS. LARKIN:  Okay.

19         MR. BRENNAN:  And, Your Honor, are you referring to

20   the one -- the one that was set up and filed with Your Honor

21   as part of the parties' original November 8th, that book, as

22   opposed to the one the plaintiffs filed without consent as far

23   as the exhibits?

24         THE COURT:  Do they have different markings,

25   different exhibit numbers on them?

1          MR. BRENNAN:  Their exhibit tabs, I believe, are

2     different than the original.

3          THE COURT:  For their exhibits or for yours?

4          Did they file a book purporting to be both exhibits?

5          MR. BRENNAN:  They filed a book purporting to be

6     both exhibits without consent.

7          That was that last time where we didn't consent to

8     it.  We filed it with the plaintiff pro se and pro se

9     assistance counsel back on, I guess it was November 8th, with

10    our order at that time.  That was jointly filed.

11         THE COURT:  Are there different numbers on the set

12    that there's going to be some confusion?

13         MR. BRENNAN:  There could be some variation, yes.

14         MS. LARKIN:  We did not change any of Delta's

15    exhibit numbers in the proposed exhibit list that we presented

16    last time.

17         THE COURT:  Are any of your exhibits missing?

18         MR. BRENNAN:  Your Honor, I don't -- I just --

19    again, what I'm looking at is they filed a whole different

20    book than what we filed originally, which I'm just making sure

21    that it's the book we originally filed as opposed to what they

22    filed on their own, in recent time, right before that last

23    conference.

24         THE COURT:  But other than who filed what, I'm not

25    understanding --

1          MR. BRENNAN:  They did ask --

2          THE COURT:  -- what the issue is?

3          I mean, are all the exhibits that you want into

4   evidence, are they all in the book that the government filed?

5          MR. BRENNAN:  Plaintiffs?

6          THE COURT:  I'm sorry, the plaintiffs filed?

7          MR. BRENNAN:  I don't believe everything we have,

8   I'll double check, but I don't believe everything's in there.

9          And, again, I don't understand the purpose of their

10  book.  We had already submitted it to the Court.

11         THE COURT:  What you have submitted, is it just your

12  exhibits?

13         MR. BRENNAN:  Our exhibits, and then they have some

14  in theirs, I think, that were additional.

15         THE COURT:  You want your exhibits to be the

16  exhibits as you filed them in your black book?

17         MR. BRENNAN:  We want the trial exhibits to be as we

18  filed them with the plaintiff originally on November 8th.

19         THE COURT:  But that may be fine if you're concerned

20  about your exhibits, but I'm concerned that your book doesn't

21  have all of plaintiff's exhibits.

22         I tell you what the parties ought to do.  Plaintiffs

23  prepare a book, don't change the numbers, just prepare a book

24  of the exhibits that you're going to use at trial.

25         You prepare a book of the exhibits you want to use

1   at trial.

2            And have the defendant's exhibit book and a

3   plaintiff's exhibit book, okay?  Therefore, you're not

4   prejudiced in any way about how they characterized your

5   exhibits.  And you're keeping the same numbers on them.

6            I mean, I'm having a hard time getting my head

7   around what we're talking about.

8            MR. BRENNAN:  Your Honor, it was just -- it was just

9   a straightforward, I believe, suggestion or asking about --

10           THE COURT:  But I don't know --

11           MR. BRENNAN:  Okay.

12           THE COURT:  -- I mean, they have counsel now.

13  Before we had her running around pro se with the assistance of

14  the pro se law clerk.

15           They have counsel now and they filed exhibits.  I

16  take it you saw what they filed.

17           The only issue would be if somehow plaintiffs put in

18  an exhibit that you've never seen before and that you didn't

19  have any advance warning on or something like that that you

20  would say, listen, I shouldn't be surprised about this now.

21           But are you in the dark about what plaintiff's

22  exhibits are?

23           MR. BRENNAN:  No, Your Honor.

24           THE COURT:  Okay, then we're all happy as if we had

25  good sense, to use an expression my father used to use often.

1        So if you want to put your defendant's exhibits in a

2   separate book, and you want put your plaintiff's exhibits in a

3   separate book, and then maybe before trial you all can look

4   through them and make sure somebody hasn't sandbagged somebody

5   else, but then you know where your each individual exhibits

6   are and you can work off of that when you're putting them into

7   evidence with the jury and all of that.

8        It might be the most sensible thing to do.  Okay?

9        All right.  Thank you.

10       MR. BRENNAN:  Thank you.

11

12       (Whereupon, the matter was concluded.)

13

14                 *      *      *      *      *

15

16

17  I certify that the foregoing is a correct transcript from the
    record of proceedings in the above-entitled matter.
18

19  s/ Linda D. Danelczyk                May 15, 2019

20    LINDA D. DANELCZYK                     DATE

21

22

23

24

25