1        UNITED STATES DISTRICT COURT
         EASTERN DISTRICT OF NEW YORK
2    - - - - - - - - - - - - - - - X
                                   :
3    RUTH ABIGAIL DESRAMEAUX,      :   15-CV-00347(SJB)(CBA)
                                   :
4         Plaintiff,               :
                                   :
5                                  :   United States Courthouse
     -against-                     :   Brooklyn, New York
6                                  :
                                   :
7                                  :   May 28, 2019
     DELTA AIRLINES, INC.,         :   9:00 a.m.
8                                  :
         Defendant.                :
9    - - - - - - - - - - - - - - - X
10
             TRANSCRIPT OF CIVIL CAUSE FOR JURY SELECTION
11        BEFORE THE HONORABLE SANKET J. BULSARA
               UNITED STATES DISTRICT JUDGE
12

13                    A P P E A R A N C E S:

14   For the Plaintiff:  SLENDY & GAY PLLC
                         1290 Sixth Avenue
15                       New York, New York 10104

16                   BY:  MEGAN LARKIN, ESQ.
                          OSCAR SHINE, ESQ.
17                        ANDREW DUNLAP, ESQ.

18
     For the Defendant:  RYAN & BRENNAN LLP
19                       131 Tulip Avenue
                         Floral Park, New York 11001
20
                     BY:  JOHN BRENNAN, ESQ.
21

22   Court Reporter:        DENISE PARISI, RPR, CRR
                            Official Court Reporter
23                          Telephone: (718) 613-2605
                            E-mail:  DeniseParisi72@gmail.com
24

25   Proceedings recorded by computerized stenography.  Transcript
     produced by Computer-aided Transcription.

1          (In open court.)

2          THE COURTROOM DEPUTY:  All rise.

3          THE COURT:  Please be seated.  Good morning.

4          THE COURTROOM DEPUTY:  This is civil cause for a

5    jury selection.  Case number 15-CV-347, Desrameaux v. Delta

6    Air Lines, Inc.

7          Counsel, please state your appearances for the court

8    reporter.

9          MS. LARKIN:  Megan Larkin for plaintiff, Ruth

10   Desrameaux.

11         THE COURT:  Good morning.

12         MR. SHINE:  Oscar Shine for the plaintiff.

13         MR. DUNLAP:  Andrew Dunlap for the plaintiff, and

14   plaintiff is with me at counsel table.

15         THE COURT:  Good morning, Ms. Desrameaux.

16         MR. BRENNAN:  Good morning, Your Honor.  John

17   Brennan from Ryan, Brennan & Donnelly for Delta Air Lines.

18         THE COURT:  Good morning.

19         All right, so we are going to begin jury selection

20   in a few moments.  I have reviewed the parties' submissions

21   and perspective questions.

22         Mr. Brennan, I don't believe I received a summary of

23   the case description from you, so all I have is one from the

24   plaintiff, and I will tell you how I will describe the case.

25   Let me know if you have any objection, okay?

1      This is an action alleging racial discrimination and

2 breach of contract.  The plaintiff, Ruth Desrameaux, alleges

3 that Delta Air Lines breached its contract with her and

4 discriminated against her on the basis of race when a Delta

5 gate agent refused to allow Ms. Desrameaux, who is black, to

6 board an airplane with her carryon bag unless she paid a $25

7 fee.  Ms. Desrameaux also alleges that Delta gate agent

8 allowed a white passenger with a larger bag to board the plane

9 without issue.  Delta denies each and every one of these

10 allegations.

11              MR. BRENNAN:  That's fine, Your Honor.

12              THE COURT:  Okay.  Great.

13              MR. BRENNAN:  Thank you.

14              THE COURT:  A couple of things.

15              First, Ms. Larkin, does your client consent to a

16 magistrate judge and to my conducting the jury selection in

17 this case?

18              MS. LARKIN:  Yes, she does.

19              THE COURT:  Mr. Brennan, does your client consent?

20              MS. LARKIN:  Our client consents to Your Honor

21 presiding over the jury selection.  Thank you.

22              THE COURT:  Okay, great.

23              So this is how we are going to proceed.  Judge Amon

24 has asked for eight jurors, which means that because each side

25 will get three peremptory strikes, I will call forward the

1  first 14 jurors from the jury list, and those of you who are

2  seated in the audience, I'm going to ask to you sit on one

3  side of the courtroom or the other, not both sides, because I

4  need to seat the jurors first in the back of the courtroom, so

5  I'm going to call forward 40 jurors and then call the first 14

6  to have them seated in the box, so all of you will have to

7  make due with each other, or at least the first two rows on

8  one particular side.

9          So I will call forward the first 14 names off the

10 jury list, we'll do some basic questioning to determine

11 whether or not there are any jurors who should be excused for

12 cause.

13         Let me ask, one of the things is if the jurors know

14 any of the individuals who might testify or are mentioned

15 during trial.  The individuals I have from the parties'

16 submission are:  Jenny Medina, Tiffany Flores, John Morrison

17 and Scott Erickson and the plaintiff, Ms. Desrameaux.

18         Anyone else?

19         Mr. Brennan, anyone else that comes to mind?

20         MR. BRENNAN:  I don't think so, Your Honor.

21         THE COURT:  Ms. Larkin?

22         MS. LARKIN:  That sounds right, Your Honor.

23         THE COURT:  Okay.  I'm telling the parties that the

24 trial is expected to last two to three days beginning after

25 jury selection; is that consistent with the parties'

1  expectations?

2          MS. LARKIN:  We believe it might only take one day.

3          THE COURT:  Okay.

4          MR. BRENNAN:  Your Honor, your estimate sounds about

5  right.  Thank you.

6          THE COURT:  Okay.  So let me say this:  It's always

7  better to tell the jurors it will last longer than it might

8  actually be, but what I will say is it will comfortably be

9  over by Thursday, I think, is a fair estimate given what I've

10 read about the case if we begin opening statements this

11 afternoon, but I will say three days and, you know, it could

12 be -- I will say, it will be three days and comfortably by

13 Thursday, but it could be even shorter than that.

14          After I finish the for-cause questioning, the

15 parties are welcome to approach me at the sidebar and let me

16 know whether there are any other for-cause questions they

17 believe I should ask the perspective panel.  I've reviewed

18 each of the voir dire submissions and attempted to incorporate

19 them both using my discretion as to determine what's

20 appropriate, but as well as what I think is a question

21 appropriate for for-cause inquiry as opposed to something that

22 I would ask during the questionnaire process which I will get

23 to in a moment.

24          So, Mr. Brennan, there were a number of questions in

25 your submission that related to the NYPD, law enforcement, and

1    the like.  I am not inclined to ask any of those questions

2    unless I'm missing something and there's some element of law

3    enforcement who are -- that's going to come out during the

4    course of this case.  I assume that that was just sort of

5    generic questions, which are often asked, say, in the 1983 or

6    1981 action, but this is not a case that involves the NYPD in

7    any respect.

8          MR. BRENNAN:  You are right, Your Honor, it doesn't

9    involve the NYPD in any respect.  What we will have if we put

10   on witnesses on defense, one of the witnesses presently

11   employed as an NYPD officer, so that would have been one

12   context.

13          In addition --

14          THE COURT:  So let me ask you this:  Do you intend

15   to elicit from that witness the fact that they work for the

16   NYPD currently?

17          MS. LARKIN:  It really would be just a matter of

18   pedigree, Your Honor, just to have an understanding of where

19   she's presently employed, that's really it, because --

20          THE COURT:  But my point is, if you were to waive

21   asking that question, it obviates the need to engage in a

22   number of questions about the NYPD.  In other words, if you

23   are not going to elicit that from your witness, I don't need

24   to get into whether or not individuals work at the NYPD,

25   whether they have views about the NYPD, et cetera, et cetera.

1        MR. BRENNAN:  Again, what I would say, Your Honor,

2   is that we're intending to just question just from a pedigree

3   standpoint because it would be a natural question to ask in

4   that the individual was employed by Delta is now employed by

5   the NYPD, but not to go over -- we are not going to be talking

6   about her experiences in the NYPD during the course of this

7   trial.  It's just the pedigree:  She was employed at Delta,

8   she's now employed by the NYPD, and that would be it.

9        The other element of, I guess, law enforcement in

10  the context of the case, Your Honor, would be the potential

11  for Port Authority police officers to testify concerning

12  responding to the aircraft and removing Ms. Desrameaux from

13  the plane.  There has been a lot of discussions already with

14  Her Honor.  Her Honor has indicated that's not coming in.

15  Some of these items, as far as the -- items other than just

16  the plaintiff getting on the plane and -- with her bag, beyond

17  that, Her Honor was indicating that she didn't want other

18  stuff to come in, but the possibility is obvious that the door

19  could be open and we would potentially be having the Port

20  Authority officers to come in and testify.

21        THE COURT:  Well, I'm not going to ask questions on

22  the basis the door is open accidently.  Those are not any of

23  the individuals you have listed on the list of names; is that

24  correct?

25        MR. BRENNAN:  No.  We've listed them:  Port

1    Authority Officers Morrison and Erickson.

2              THE COURT:  I see.

3              MR. BRENNAN:  So the names were Jennie Medina,

4    Tiffany Flores, Port Authority Officer Morrison, Port

5    Authority Officer Erickson.

6              THE COURT:  All right.  Let me deal with the NYPD

7    first.

8              With respect to the NYPD, I'm prepared to ask the

9    following question:  One of the witnesses who may be called

10   currently works for the NYPD.  Nothing about this case

11   involves the NYPD or any investigation by the NYPD.  Is there

12   anything about the fact that a witness currently works at the

13   NYPD that would prevent you from being fair and impartial in

14   this case?

15             MR. BRENNAN:  That's acceptable to us, Your Honor.

16             THE COURT:  Ms. Larkin?

17             MR. SHINE:  In plaintiff's pretrial legal

18   memorandum, it --

19             THE COURT:  Is my question acceptable to you?

20             MR. SHINE:  The answer is no, Judge, because we've

21   moved in our pretrial legal memorandum to exclude Tiffany

22   Flores's current affiliation with the New York Police

23   Department because it's irrelevant and, we think, prejudicial.

24   Judge Amon has not yet had an opportunity to rule on that

25   motion.

1     THE COURT:  Well, that's further reason I should ask

2  the question because if you lose the motion, then you

3  potentially have failed to exclude a witness who should be

4  excluded for cause.  In saying that there may be a witness who

5  may be called solves the issue, so the objection to the

6  phrasing of the question as I phrased it.

7     MR. SHINE:  Fair enough, Your Honor.  No objection

8  to the phrasing of the question.

9     THE COURT:  On the Port Authority, what's your

10  position?

11     MR. SHINE:  So, Judge, as counsel for Delta

12  mentioned, all of that was excluded as irrelevant and

13  prejudicial by the Court, so we would object to --

14     THE COURT:  So I'm not going to ask a question

15  that's not in evidence.

16     MR. BRENNAN:  Can we note our exception, Your Honor?

17     THE COURT:  You don't need to; you are in federal

18  court.

19     MR. BRENNAN:  Thank you.

20     THE COURT:  There are lots of things that can be --

21  let's take the easiest example -- and this is not such a case,

22  so let me be clear -- if there are cases in which a witness is

23  expected to testify and that witness has a prior criminal

24  history, okay, and someone moves in limine to exclude the

25  mention of the prior criminal history and that motion is

1   granted, it is obviously possible on direct for counsel to

2   open the door to the criminal history by saying, have you ever

3   been in trouble with the law, are you a good citizen who has

4   always been an honest person, but you don't infect the jury

5   with the question if it's been excluded and ruled upon.  The

6   NYPD is different, the Court hasn't ruled upon it, so to

7   the -- I'm not asking questions about the Port Authority, but

8   your exception is noted for the record.

9              MR. BRENNAN:  Thank you, Your Honor.

10             THE COURT:  Okay.

11             So after I do the for cause questioning, the parties

12  can let me know at the sidebar if there's anything else they

13  believe I need to ask, and then we will hand each of the 14

14  jurors a questionnaire which consists of 12 questions.

15             Mr. Manson will now hand you a copy of what that

16  questionnaire is, and this captures a lot of the basic

17  questions that I think were in many of your proposed voir dire

18  which go to the basic characteristics of any deemed individual

19  jurors, okay?

20             Now, after that, we will quickly move to peremptory

21  strikes.  Each side gets three strikes.  We will have two

22  rounds of peremptory strikes.  The defendant will go first in

23  round one and strike two individuals, followed by the

24  plaintiff who will then strike two individuals, the plaintiff

25  will go next in round 2 striking one individual, and then the

1   defendant will strike the last individual.  You cannot save

2   strikes, so if you don't use your strike, it is waived.

3               Any questions?

4               MS. LARKIN:  No, Your Honor.

5               MR. BRENNAN:  No, Your Honor.

6               THE COURT:  So without further adieu, Mr. Manson

7   will go and get the prospective jurors.  I need the parties'

8   members to sit on one side or the other so that we can have

9   the jurors sit in the remainder.

10              And if you have stuff, I would like you to please

11  move it from your side of the court.

12              Thank you.

13              We will be giving each side the names of the jurors

14  so that you can follow along.

15              (Pause.)

16              THE COURT:  All rise, please.

17              (Prospective jurors enter the courtroom.)

18              THE COURT:  Please be seated.  Good morning, ladies

19  and gentlemen.  Welcome to the Eastern District of New York.

20  My name is Judge Sanket Bulsara, and we are here to select a

21  jury in a case called Desrameaux v. Delta Air Lines.  It's a

22  civil case, and it's a case that's expected to begin today and

23  last no more than three days.  It's going to be presided over

24  by Judge Carol Amon, and although I said it would be no more

25  than three days, it could be over well short of three days,

1  and what I'm going to do first is introduce the parties and

2  their counsel to you.

3          The plaintiff is Ms. Ruth Desrameaux.  She's

4  represented by Megan Larkin, Oscar Shine, and Andrew Dunlap

5  from the law firm of Selendy & Gay; and the defendant in this

6  case is Delta Air Lines, and Delta Air Lines is represented by

7  Mr. John Brennan.

8          Now, the process of selection of jurors is called

9  voir dire, and it requires me to ask a number of you questions

10  to determine whether or not you are fit to serve on this jury,

11  and the answers to my questions will have to be under oath,

12  and as a result, my courtroom deputy, Mr. Manson, is going to

13  swear you in, so I would ask you all to rise and raise your

14  right hands, please.

15          (Prospective jurors sworn.)

16          THE COURTROOM DEPUTY:  You may have a seat.

17          THE COURT:  Mr. Manson, can you pass out the juror

18  lists to counsel, please?

19          THE COURTROOM DEPUTY:  (Handing.)

20          THE COURT:  Mr. Manson, if you could call for the

21  first fourteen jurors simply by spelling their last names and

22  have them seated in the jury box.

23          So, ladies and gentlemen, Mr. Manson is going to

24  call 14 of you forward, and as he does, he will instruct you

25  where to sit in the jury box, okay?

1      THE COURTROOM DEPUTY:  Good morning, ladies and

2  gentlemen.  I will try to pronounce everybody's name

3  accurately.  If I mispronounce people's name, I apologize in

4  advance.

5      First person Harrison, first name is B-E-I, please

6  come forward.

7      Juror No. 2, Ellen Chao, please come forward.

8      Juror No. 3, Robert Coupet, C-O-U-P-E-T.

9      Juror No. 4, Joseph Modena.

10     Juror No. 5, Emily Dubno.  Spelling of the last name

11  is D-U-B-N-O.

12     Juror No. 6, Vincent Carucci, C-A-R-U-C-C-I.

13     Juror No. 7, Baboo.  Spelling of the last name is

14  B-A-B-O-O.

15     Juror No. 8, Mike Bain, B-A-I-N.

16     Juror No. 9, spelling of the last name,

17  S-U-T-I-K-N-O.  First name is S-U-H-A-D-E-W-A.

18     Juror No. 10, spelling of the last name,

19  L-E-E-L-U-M, please come forward.

20     Juror No. 11, spelling of the last name, G-R-A-Y,

21  first name Lynnette, please come forward.

22     Juror No. 12, last name is L-E-E, first name Yun

23  Pei, Y-U-N P-E-I.

24     Juror No. 13, spelling of the last name,

25  W-I-L-L-I-A-M-S, first name Gloria.

1          Juror No. 14, spelling of the last name

2     S-A-N-D-M-A-N, first name Corey.

3          THE COURT:  Thank you, ladies and gentlemen.

4          I'm going to start asking questions of the jurors

5     whose names have been called.  For example, I'm going to ask

6     the jurors if they know any of the lawyers in the case.  Now,

7     it's very important for all of you, including those of you who

8     are sitting in the audience, to pay close attention to the

9     questions I'm asking and to make note if any of the questions

10    I ask, whether you would have answered "yes" to, and that's

11    because if any of the 14 jurors who have been called are

12    excused, I will call up one of the jurors from the back of the

13    room to replace that juror, and I'm not going to repeat all of

14    my questions; I'm simply going to ask would any of the answers

15    to my questions been "yes."

16          Now, I just want to take a moment to explain why we

17    ask the questions that we do.  The parties to this lawsuit,

18    the plaintiff and the defendant, they have a right to a jury

19    trial, and this means they have a right to be tried by

20    qualified, fair and impartial jurors.  What's an impartial

21    juror?  An impartial jury is one that decides the case without

22    fear, favor, bias, prejudice, passion, or sympathy.  It's a

23    jury that will objectively hear and decide the issues in the

24    case and will render a verdict based solely on the facts they

25    hear during the course of the trial and the applicable law

1   that will be instructed to you by the trial judge.  And to

2   make sure that a jury and a juror can be impartial and fair,

3   we ask questions.  The questions are designed to understand

4   the juror's frame of mind and trust that the juror will follow

5   his or her sworn duty to be fair and impartial.

6           Now, it may seem that some of the questions that I

7   ask are intended to invade your privacy.  That's not our

8   purpose here today.  As a result, if there's a question I ask

9   and you would rather answer the question in private, just

10  indicate that to me and we'll hear you at what's known as the

11  "sidebar," okay?  Unless you indicate to me that you need to

12  be heard at the sidebar, I'm going to assume that you're

13  comfortable answering the question in open court, okay?  And

14  it's okay to say, Judge, I would like to answer this question

15  at the side, please, okay?

16          Now, for the process to have actual meaning, it's

17  important that your answers be truthful and honest, whatever

18  your answers may be, and that's why you were sworn.  Your

19  answers to my questions are answers under oath, and so what

20  I'm going to do now is begin asking questions, primarily

21  directed to the 14 of you who are seated in the jury box, and,

22  of course, I ask that everybody else pay close attention in

23  case you are called up, okay?

24          Now, I introduced you to the plaintiff,

25  Ms. Desrameaux, and her lawyers.

1          Do any of you know any of them?

2          THE JURY:  No.

3          THE COURT:  You don't need to answer "no."  If you

4  have to say "yes" to a question, just raise your number, I

5  should have said -- I'm sorry -- okay?

6          Now, I indicated that the defendant is Delta Air

7  Lines.  Do any of you work for Delta?

8          Okay, no one has raised their placard.

9          Do any of you know Mr. Brennan who is the lawyer for

10  Delta?

11          Okay, no one has raised their number.

12          Do any of you work at JFK Airport.

13          Okay, no one has raised their number.

14          What I'm going to do next is read a list of names of

15  people who may either testify or might be mentioned during the

16  course of the trial, and if I mention someone and you know

17  that person or heard of this person, just raise your placard

18  and I will go further with you.

19          So here are the list of names, okay?  Jenny Medina,

20  Tiffany Flores, John Morrison, Scott Erickson.

21          Okay, no one has raised their placard.

22          As I said, this trial is expected to begin today and

23  last no more than three days.  Do any of you face a particular

24  substantial hardship to serve during that period of time?

25  Now, let me tell you now that you have a job or work

1   responsibilities is not going to get you out of jury service,

2   nor is the fact that for a two- or three-day trial your

3   employer will not pay you for jury service, so your hardship

4   must be substantial, and what that means is that there is some

5   obligation you have that cannot be moved or otherwise

6   accommodated.

7           Okay, Jurors No. 1 and 5.  Mr. Manson is going to --

8           THE PROSPECTIVE JUROR:  Is it okay if I come to you?

9           THE COURT:  You want to come to the sidebar?  That's

10  fine.

11          Ms. Dubno, are you comfortable answering in open

12  court?

13          THE PROSPECTIVE JUROR:  Can I meet you at the

14  sidebar, please?

15          THE COURT:  Okay, sure.

16          Why don't we see Mr. Bei first at the sidebar.

17          (Prospective juror approaches.)

18          (Sidebar.)

19          THE PROSPECTIVE JUROR:  I have to appear at another

20  court tomorrow morning, but I can come for jury all the other

21  days.  I got a ticket from the town and I tried to get, like,

22  another date, but they did not really accommodate.  I have to

23  go here tomorrow morning.  I already went to the court and

24  talked with them to see if they can adjourn, I guess.

25          THE COURT:  Okay.

1          THE PROSPECTIVE JUROR:  This is --

2          THE COURT:  Understood.  Can you step to the back

3     for a moment?

4          (Prospective juror steps away.)

5          THE COURT:  I'm going to excuse the juror for cause;

6     he has another obligation.  Any objection?

7          MR. BRENNAN:  No objection.

8          MR. SHINE:  No.

9          (Prospective juror steps forward.)

10          THE COURT:  Because you have a court appearance

11     personally, I'm going to excuse you, but you have to go back

12     downstairs to the jury room.

13          THE PROSPECTIVE JUROR:  Yes.  Thank you so much.

14          THE COURTROOM DEPUTY:  Your number?

15          THE COURT:  Juror No. 1.

16          THE COURTROOM DEPUTY:  Head down to the jury

17     department and let them know you were excused from this case.

18          (Prospective juror exits the courtroom.)

19          THE COURT:  Ms. Dubno?

20          (Prospective juror steps forward.)

21          THE COURT:  Yes?

22          THE PROSPECTIVE JUROR:  I start summer school next

23     week and I already paid for tuition and --

24          THE COURT:  There's no chance this case will go into

25     next week.

1          THE PROSPECTIVE JUROR:  Okay.  That's fine.

2          THE COURT:  You can have a seat.

3          (Sidebar ends.)

4          (In open court.)

5          THE COURT:  Mr. Manson please call the next juror to

6    replace Juror No. 1.

7          THE COURTROOM DEPUTY:  Jacob Trupin.  Spelling of

8    the last name is T-R-U-P-I-N.  Please come forward.

9          THE COURT:  Mr. Trupin, is there any question you

10   would have answered "yes" to?

11         THE PROSPECTIVE JUROR:  No.

12         THE COURT:  Okay.  I'm going to continue with the

13   questioning, okay?

14         Do any of you have any problem seeing or hearing

15   which would make it difficult for you to follow the Court

16   proceedings?

17         Okay, no one has raised their hand.

18         Do any of you have problems with the English

19   language that would prevent you from following court

20   proceedings?

21         Okay, no one has raised their hand.

22         Now, this is a multipart question, so just wait

23   until I finish with the question, then raise your placard,

24   okay?

25         Do any of you have a background or taken courses in

1   the law, worked for an attorney or law firm, have had close

2   friends or relatives who are lawyers or work for lawyers?

3           Okay, we have Juror No. 1, 6, 8, 13, and 14.

4           Mr. Trupin, I'm going to assume, as with everyone,

5   unless you tell me otherwise, I'm going to do this in open

6   court.

7           THE PROSPECTIVE JUROR:  Yeah, that's fine.

8           THE COURT:  You worked in the law or know someone

9   who has?

10          THE PROSPECTIVE JUROR:  My cousin was a lawyer.  He

11  no longer works as a lawyer.

12          THE COURT:  Anybody else?

13          THE PROSPECTIVE JUROR:  No.

14          THE COURT:  Are you able to put outside of your mind

15  anything you might have learned about the law from your cousin

16  and follow the Court's instructions on what the law is?

17          THE PROSPECTIVE JUROR:  Yes.

18          THE COURT:  Okay, thank you.

19          Juror No. 8, Mr. Bain?

20          THE PROSPECTIVE JUROR:  A good friend of mine used

21  to work for the CCRB for the City, now he's a trust and

22  estates lawyer.  And another good friend of mine is a bailiff

23  in the New York court district.

24          THE COURT:  Okay.  Are you able to put out of your

25  mind what you might have picked up from conversations with

1  them and decide this case solely based on the law that the

2  Court instructs you on?

3           THE PROSPECTIVE JUROR:  Yes, Your Honor.

4           THE COURT:  Okay, thank you.

5           Juror No. 13, Ms. Williams?

6           THE PROSPECTIVE JUROR:  Yes, I have --

7           THE COURT:  You have to speak into that really

8  closely.

9           THE PROSPECTIVE JUROR:  Yes, I have two relatives

10 that are into law, they live in California, and one of my

11 cousins, her husband's cousin is a district attorney in, I

12 think, Brooklyn, but I don't really speak to them about law.

13          THE COURT:  Okay.  So whatever you might have picked

14 up, however often you have spoken to them, are you able to

15 follow the Court's instructions on what the law is?

16          THE PROSPECTIVE JUROR:  Oh, yeah, because I don't

17 see them that often.  I seen one this weekend, but it had been

18 a while since I saw her.

19          THE COURT:  Okay.  This case will be over by this

20 upcoming weekend, so you won't have any occasion to talk to

21 that person about the law.

22          THE PROSPECTIVE JUROR:  No, not at all.

23          THE COURT:  Mr. Sandman?  Juror 14?

24          THE PROSPECTIVE JUROR:  Yes.

25          THE COURT:  You have worked in the law or know a

1   lawyer?

2          THE PROSPECTIVE JUROR:  My cousin's husband is a

3   lawyer.

4          THE COURT:  Are you able to put out of your mind any

5   law you might have received or understood from that person?

6          THE PROSPECTIVE JUROR:  Yes.

7          THE COURT:  Okay.

8          Next question is:  The function of the jury is to

9   decide the facts in the case.  It's the job of the judge to

10  instruct the jury on what the law is.  You must accept the law

11  as the Court instructs you upon, whether you agree with it or

12  not.

13         Is there anyone who doesn't understand this or who

14  could not accept that?

15         Okay, no one has raised their placard.

16         Next question:  You may have heard the term from

17  television or elsewhere "beyond a reasonable doubt."  That is

18  the standard in a criminal case.  This is a civil case, and

19  the standard that applies in a civil case is the fair

20  preponderance of the evidence.  You will be instructed by the

21  trial judge on what that term means.  Is there anyone who

22  could not follow the judge's instructions and apply the

23  relevant standard for a civil case?

24         Okay, no one has raised their hand.

25         Next question:  Have you, close friend, or relative

1    ever been a party to a lawsuit; that is, been sued or brought

2    the lawsuit as a plaintiff?

3            Okay, Juror No. 1 and 6.

4            Anyone else?

5            Okay, Mr. Coupet?

6            THE PROSPECTIVE JUROR:  Yes, when I was younger, my

7    dad was sued in, like -- as part of a real estate transaction

8    when we were selling our house.

9            THE COURT:  Okay.  So this is not a real estate

10   case.  Is there anything about that, your father's experience,

11   that would prevent you from being fair and impartial in this

12   case?

13           THE PROSPECTIVE JUROR:  No.

14           THE COURT:  Okay.  Thank you.

15           Juror No. 6, Mr. Carucci?

16           THE PROSPECTIVE JUROR:  Hello.  I was probably --

17   four or five years ago, I was sued as part of a traffic case.

18           THE COURT:  Was it a personal injury case?

19           THE PROSPECTIVE JUROR:  Yes.

20           THE COURT:  So this is not a personal injury case.

21   Is there anything about your experience as being a defendant

22   that would prevent you from being fair and impartial in this

23   case?

24           THE PROSPECTIVE JUROR:  No.

25           THE COURT:  Okay.  Thank you.

1          Was there anyone else?

2          THE COURTROOM DEPUTY:  Juror No. 8.

3          THE COURT:  Juror No. 8, Mr. Bain?

4          THE PROSPECTIVE JUROR:  My mother-in-law was sued

5    for malpractice.

6          THE COURT:  Was it a medical malpractice?

7          THE PROSPECTIVE JUROR:  It was a medical

8    malpractice.

9          THE COURT:  Okay.  This is not a medical malpractice

10   case.  Anything about your mother-in-law's experience that

11   would prevent you from being fair and impartial in this case?

12         THE PROSPECTIVE JUROR:  No, Your Honor.

13         THE COURT:  Okay.  Thank you.

14         All right.  I'm going to tell you a little bit about

15   what this case is about, okay, so I'm going to read you a

16   description of the case and then ask you some follow-up

17   questions, okay, so please listen carefully.

18         This is an action alleging racial discrimination and

19   breach of contract.  The plaintiff, Ruth Desrameaux, alleges

20   that Delta Air Lines breached its contract with her and

21   discriminated against her on the basis of race when a Delta

22   gate agent refused to allow Ms. Desrameaux, who is black, to

23   board an airplane with her carry-on bag unless she paid a $25

24   fee.

25         Ms. Desrameaux also alleges that the Delta gate

1  agent allowed a white passenger with a larger bag to board the

2  plane without issue.  Delta denies each and every one of these

3  allegations.

4          Okay, here are some follow-up questions:  Number

5  one, have any of you heard anything about this case?

6          Okay, no one has raised their hands.

7          Have any of you read anything about this case?

8          Okay, is there anything about the allegations in

9  this case that would prevent you from being fair and

10  impartial?

11          Okay, Juror No. 6, let me talk to you at the

12  sidebar.

13          (Sidebar.)

14          THE COURT:  Mr. Carucci, go ahead.

15          THE PROSPECTIVE JUROR:  I'm very politically active.

16  I'm an activist and I think racial discrimination is a big

17  issue for me.  It's something I spend a lot of time about and

18  I think there's a lot of racial discrimination, and I'm not

19  sure -- I think that would lead me to a bias or something

20  towards this.

21          THE COURT:  So let me say the following:  Everyone

22  has various life experiences.  Jurors are not robots and

23  everyone comes to the jury box with life experiences and work

24  experiences, whatever they do politically, work-wise, what

25  have you.  What is a juror's obligation, knowing that they

1   have all of these life experiences, is when they decide the

2   case that's before them, number one, keep an open mind; number

3   two, that they decide the case solely based on the facts in

4   the courtroom and the law that the judge instructs you on.

5           Are you able to keep an open mind?

6           THE PROSPECTIVE JUROR:  I can say yes to that, but

7   like I said, I'm trying very hard to prevent racial

8   discrimination.  I read a lot of stuff about it every day and

9   we talk about it, we argue about it, so I can say yes to that

10  question, I can try to keep an open mind, but I can't

11  guarantee.

12          THE COURT:  What do you do for a living?

13          THE PROSPECTIVE JUROR:  Accountant.

14          THE COURT:  So you haven't heard anything about this

15  case other than a description in allegations and you are still

16  saying that you would not keep an open mind?

17          THE PROSPECTIVE JUROR:  I'm saying I think can, but

18  I'm saying I do have a strong bias towards --

19          THE COURT:  Is there a reason you believe that you

20  cannot keep an open mind?  You are under oath and you have

21  taken an oath, so --

22          THE PROSPECTIVE JUROR:  I can say no, I will keep an

23  open mind.

24          THE COURT:  Okay, you will keep an open mind, okay.

25          Will you decide this case based solely on the facts?

1          THE PROSPECTIVE JUROR:  Yes.

2          THE COURT:  And the law that the Court instructs you

3     on?

4          THE PROSPECTIVE JUROR:  (No verbal response.)

5          THE COURT:  You can't nod your head.

6          THE PROSPECTIVE JUROR:  Yes.

7          THE COURT:  All right, great, thank you.  Can you

8     step aside for a moment.

9          (Prospective juror steps away.)

10          THE COURT:  I don't believe there's basis to excuse

11     this juror.

12          MR. BRENNAN:  I disagree.  I think he's expressed

13     that he has a bias and he said that he can't guarantee.  He

14     did say he can't guarantee that he's going to be fair and he

15     has expressed that he's very active in this area and he

16     answered that question and he -- at the outset that he

17     couldn't be fair.

18          THE COURT:  Well, that's the purpose of me asking

19     follow-up questions, and a lot of jurors come up with their

20     initial inclination.  He answered my question twice about,

21     number one, can you decide the case based on just the facts

22     and the law and he said yes, and I asked can he keep an open

23     mind and he said he would keep an open mind, so I'm not

24     excusing this juror.

25          MR. BRENNAN:  He said he couldn't guarantee that.

1        THE COURT:  That's what he said at the beginning,

2   that's why there were follow-up questions.  Your objection has

3   been noted.  You can use a peremptory strike.  Let's go

4   forward.

5        MR. BRENNAN:  Thank you.

6        (Sidebar ends.)

7        (In open court.)

8        THE COURT:  Okay, is there anyone else?

9        Moving on.

10        Have you, a family member, or close personal friend

11   ever worked for an airline or the airline industry?

12        Okay, no one has raised their placard.

13        THE COURTROOM DEPUTY:  Yes.

14        THE COURT:  Oh, I'm sorry.

15        THE COURTROOM DEPUTY:  Number 12.

16        THE COURT:  Juror 12, just give me a moment, please.

17   Ms. Lee, unless you want to speak at the sidebar, we will do

18   this in open court.

19        THE PROSPECTIVE JUROR:  It was my ex, so --

20        THE COURT:  Okay.  Anything about that that would

21   prevent you from being fair and impartial in this case?

22        THE PROSPECTIVE JUROR:  No.

23        THE COURT:  Okay.  Thank you.

24        The next question:  Have you, a family member, or

25   close personal friend ever had a particularly positive or

1  particularly negative experience with an airline, including

2  Delta Air Lines, that would prevent you from being a fair and

3  impartial juror in this case?

4             Okay, no one has raised their placard.

5             Next question:  Have you, family member, or close

6  personal friend ever brought a complaint or lawsuit against an

7  airline, including Delta Air Lines?

8             Okay, no one has raised their placard.

9             Next question:  Have you, a family member, or close

10 personal friend ever been a party -- which means you are

11 bringing the lawsuit or you are defending the lawsuit -- have

12 you, family member, or close personal friend ever been a party

13 or a witness in a lawsuit that alleges breach of contract?

14            Okay, no one has raised their placard.

15            Have you, family member, or close personal friend

16 ever been a party or witness in any lawsuit involving

17 allegations of racial or other discrimination?

18            Okay, no one has raised their placard.

19            One of the witnesses who may be called currently

20 works at the New York City Police Department.  Nothing about

21 this case involved the New York City Police Department or any

22 investigation by the New York City Police Department.  Is

23 there anything about the fact that a witness currently works

24 at the NYPD that would prevent you from being fair and

25 impartial?

1          Okay, no one has raised their placard.

2          Regardless of any question I've asked thus far, is

3    there anything about the case, the parties, or anything else

4    that would prevent you from being fair or impartial in this

5    case.

6          Okay, no one has raised their placard.

7          Can I see the parties at the sidebar?

8          (Sidebar.)

9          THE COURT:  Okay, at this point, I've finished the

10   for-cause questions.  Is there any other question you believe

11   I should ask?

12         MR. BRENNAN:  No, Your Honor.

13         MR. SHINE:  Your Honor, we had submitted a proposed

14   question about the propriety of punitive damages in the case.

15         THE COURT:  I'm not going to ask that question.

16   That's an inappropriate question at this point.

17         Anything else?

18         MR. SHINE:  Nothing else.

19         THE COURT:  Okay.  At this point, I'm going to move

20   to the questionnaire portion and so we'll hand the

21   questionnaire to the jurors and then have them go through it

22   one by one, okay?  And then we'll take a five-minute break and

23   then begin the peremptory strikes, most likely either in the

24   jury room or off to the side, okay.

25         MR. BRENNAN:  Thank you.

1          MR. SHINE:  Thank you, Judge.

2          (Sidebar ends.)

3          (In open court.)

4          THE COURT:  Ladies and gentlemen, the next part of

5   jury selection is called a jury questionnaire.  You are going

6   to be handed a list of questions by Mr. Manson that you are

7   going to answer in open court, okay?  These are very basic

8   questions.  It's just a way for us to get to know a little bit

9   about you and each other, so it will ask questions like where

10  do you work, where do you live, what TV do you watch, okay?

11         So first let me have the questions handed out to you

12  and then we will go one by one, okay?

13         (Pause.)

14         Okay, do each of the jurors have a copy of the

15  questionnaire?

16         Okay, so we'll start with Juror No. 1, Mr. Coupet.

17  Hold on for the microphone.  Do you have the microphone?

18         THE PROSPECTIVE JUROR:  I do not.

19         THE COURT:  You have to hold this microphone fairly

20  close to you for the audio to pick up.  I would appreciate you

21  doing that.

22         THE PROSPECTIVE JUROR:  Should I run through

23  everything?

24         THE COURT:  Yes.

25         THE PROSPECTIVE JUROR:  I lived in Astoria --

1          THE COURT:  We are going to try it the old-fashion

2     way.

3          THE PROSPECTIVE JUROR:  Hello?

4          THE COURT:  Yes, there we go.

5          THE PROSPECTIVE JUROR:  I live in Astoria, I have

6     lived there for seven years; I'm 29 years old; I rent; I have

7     a bachelor's degree, and --

8          THE COURT:  Sorry, I will interrupt every so often.

9          What's your bachelor's degree in?

10          THE PROSPECTIVE JUROR:  Journalism and mass

11     communication.

12          THE COURT:  Okay, keep going.

13          THE PROSPECTIVE JUROR:  I'm currently working; I

14     have been at my current job for six months; I do not supervise

15     anyone; I am not married --

16          THE COURT:  Sorry, where do you work?

17          THE PROSPECTIVE JUROR:  I work for a media research

18     company.

19          THE COURT:  Okay.

20          THE PROSPECTIVE JUROR:  I do not have children; I

21     usually get my news online; I watch a lot of HBO, FX programs,

22     that sort of thing, AMC; I can be a fair and impartial juror;

23     I guess I regularly visit Twitter, Reddit, medicine critic,

24     couple different places, I don't know.

25          THE COURT:  Okay, thank you.

1          Ms. Chao?

2          THE PROSPECTIVE JUROR:  I currently live in Forest

3   Hills, Queens.  I've been living there for a year, but before

4   that I still lived in Queens, just a different part.  I'm

5   23 years old; I rent my home; I have a bachelor's degree in

6   fine arts; I am currently employed as a cashier at an arts and

7   crafts store; I do not supervise people; I'm not married; I do

8   not have children; I usually get my news from the Internet off

9   the phone -- the news app on my phone.  I watch anything I

10  find interesting on Netflix or Hulu.  Right now I'm watching

11  some procedurals.  I can be a fair and impartial juror; I

12  regularly visit Twitter, Tumbler, Facebook.  That's it.

13         THE COURT:  Thank you.

14         Juror No. 3, Mr. Coupet?

15         THE PROSPECTIVE JUROR:  I live in Queens Village,

16  I've lived there over 50 years, since 1967 --

17         THE COURT:  Sir, if you can hold it a little bit

18  closer.

19         THE PROSPECTIVE JUROR:  -- since 1967.  I'm 64 years

20  old; I own my home; I spent two years in college; I am

21  currently working, I've been there for about three years at

22  this particular job, I supervise two individuals --

23         THE COURT:  And so where do you work and what do you

24  do there?

25         THE PROSPECTIVE JUROR:  I work at the Passionist

1  Monastery At the Immaculate Conception in Queens.  My wife is

2  retired, she worked for UNICEF for 39 years; I have two

3  daughters, one is a teacher and one is an executive chef; I

4  watch the news on television, whatever is available at the

5  time.  I don't really watch any particular television program,

6  whatever my wife has on is usually what I watch.  I can be

7  fair and impartial during this case, and the websites I look

8  up things, but I don't really follow any particular ...

9              THE COURT:  Thank you so much.

10             Mr. Modena?

11             THE PROSPECTIVE JUROR:  Yes.  I live in Staten

12  Island, New York; I've been there for 34 years; I'm 49 years

13  old; I own my own home; I have a master's degree in

14  administration and supervision; I work for the New York City

15  Department of Education at Susan Wagner High School, also on

16  Staten Island for 28 years; I mostly supervise children at

17  work, but there are a few people that report to me, you know,

18  at my post in the building --

19             THE COURT:  Sir, what do you do at the high school?

20             THE PROSPECTIVE JUROR:  I'm a teacher and a dean.

21             THE COURT:  Okay, great.

22             THE PROSPECTIVE JUROR:  Married for 12 years; my

23  wife is a manicurist who works at a salon also on Staten

24  Island; I have two boys, 17-year-old and 11-year old; I'm old,

25  I usually read the newspaper still, and if not, if I don't

1  pick it up that day, I will just check out the news, New York

2  Post, Daily News, Pittsburgh Post-Gazette online; TV, mostly

3  sports, sports shows, and if I'm not working, ESPN, some

4  reality shows like Wicked Tuna and things like that; I can be

5  an impartial juror; websites, like I said, New York Post

6  Pittsburgh Post-Gazette, NHL.com, things like that.

7            THE COURT:  Thank you, sir.

8            Ms. Dubno?

9            THE PROSPECTIVE JUROR:  I live in Bayside, Queens;

10 lived there for about 20-or-so years; I'm 21 years old; I own

11 my home; I'm currently going for a bachelor's in media studies

12 and psychology; I'm not currently working; I've worked as a

13 sales associate at a couple of retail stores; I'm not married;

14 I don't have any children; usually I get my news from TV,

15 social media, online newspaper; I usually watch various from

16 sci-fi shows to, like, Law & Order and Netflix stuff; yes, I

17 can be fair and impartial juror in this case; and the websites

18 I visit regularly are Facebook, Google, Twitter, Tumbler.

19            THE COURT:  Great.  Thank you so much.

20            Mr. Carucci?

21            THE PROSPECTIVE JUROR:  Hello.  I live on the border

22 of Nassau and Suffolk County in Long Island; I've been there

23 for three years; I'm 29 years old; I own a home there; I have

24 a masters in financial planning; I'm currently working as an

25 accountant; I've been at this current job for three years; I

1  don't supervise anybody; I am married, my wife works as a

2  physician's assistant; I have one infant at home; I get my

3  news via online; I don't really watch television; I can be a

4  fair and impartial juror; and I generally visit political

5  websites and You Tube and Twitter.

6          THE COURT:  Thank you so much.

7          Mr. Baboo?

8          THE PROSPECTIVE JUROR:  I live in Bayside, Queens;

9  I've been there about six years now; I'm 38 years old; I own a

10  home; I'm a pharmacist; I work for New York City Health and

11  Hospitals; I'm currently working; I've been at the job for

12  about, like, six years now; I don't supervise anybody; I'm

13  married, my spouse is a nurse practitioner; I don't have any

14  children; I get my news from, like, You Tube; I don't really

15  watch TV, just, like, you know, You Tube; I can be fair and

16  impartial as a juror; and websites, Yahoo, You Tube.  That's

17  it.

18          THE COURT:  Thank you so much.

19          Mr. Bain?

20          THE PROSPECTIVE JUROR:  I live in Grand Army Plaza

21  in Brooklyn, Prospect Heights -- Prospect Park; I have been

22  there for 13 years; I'm 52; I own my own apartment; I have a

23  bachelor's in graphic design; I currently work at Apple

24  computers; I've been there for five months; I supervise two

25  people; I am married; my wife is a freelance industrial

1   designer; we have no children; I just read two websites, which

2   is New York Times and Bloomberg; I just am starting to binge

3   watch the fourth season of Billions; I can be a fair and

4   impartial juror in this case; I'm an aviation enthusiast, so I

5   just usually go on to plane websites.

6              THE COURT:  Thank you so much.

7              Mr. Sutikno?

8              THE PROSPECTIVE JUROR:  I live in Woodhaven,

9   New York, Queens.

10             THE COURT:  I need you to keep your voice up

11  slightly.

12             THE PROSPECTIVE JUROR:  I live in Woodhaven, Queens;

13  I've been living there for 30 years, and I'm 61 years old; I

14  do own the house and I have two year of college; I'm working

15  as a chauffeur -- driver chauffeur; I do not -- I do not

16  supervise no one; I am married; my spouse work as a nurse at

17  the -- elderly -- elderly people.

18             THE COURT:  Elderly people?

19             THE PROSPECTIVE JUROR:  Yeah.  I have three minor

20  children, and usually I hear news from the radio; I do not --

21  I do not watch any television program at all; I can be fair.

22             THE COURT:  Do you visit any websites, sir?

23             THE PROSPECTIVE JUROR:  Just Facebook, stuff like

24  that.

25             THE COURT:  Sorry?

1      THE PROSPECTIVE JUROR:  Instagram and Facebook.

2      THE COURT:  Instagram and Facebook.

3      Thank you so much.

4      Leelum?

5      THE PROSPECTIVE JUROR:  Okay.  I live in Marine Park

6  in Brooklyn; I've been there for 21 years; I'm 55; I rent; I

7  have one year of college; I'm currently working for the Team

8  Companies; I don't supervise anyone; I'm not married; I have

9  no kids; I usually read the Daily News or the New York Times;

10  I hardly watch TV; I can be fair and impartial; the websites

11  is Facebook, Yahoo.  That's about it.

12      THE COURT:  Sorry, I missed where you work.

13      THE PROSPECTIVE JUROR:  The Team Companies.

14      THE COURT:  What is that?

15      THE PROSPECTIVE JUROR:  The telecommunication

16  company.

17      THE COURT:  Oh, telecommunication company, thank you

18  so much.  And what websites?  I didn't catch it.

19      THE PROSPECTIVE JUROR:  Facebook and Yahoo.

20      THE COURT:  Ms. Gray, can you just tap the mic to

21  see if it's working?  Thank you so much.

22      THE PROSPECTIVE JUROR:  I live in Brooklyn,

23  New York, Crown Heights; been there for 25 years; I'm 53, I

24  rent; I did two years of college; I'm not currently working,

25  I'm retired now; and I do not supervise anyone; and --

1          THE COURT:  What did you do before you retired?

2          THE PROSPECTIVE JUROR:  I was a bus matron for the

3    kids, school bus.

4          THE COURT:  New York City Department of Education

5    or --

6          THE PROSPECTIVE JUROR:  Yes.

7          THE COURT:  Okay.

8          THE PROSPECTIVE JUROR:  I'm not married; I have

9    kids, four, three girls and one boy; and I usually get the

10   news from channel 7 or Brooklyn News; and programs I watch is

11   Biggest Loser, season four, Netflix; I can a fair and

12   impartial juror in this case; websites is Twitter and

13   Facebook.

14         THE COURT:  Great.  Thank you so much.

15         Ms. Lee?

16         THE PROSPECTIVE JUROR:  I live in Flushing,

17   New York; I've lived there for, I think, 24 years; I am 42; I

18   own the house; I have an associates -- I have an associates; I

19   am currently working, I work for Ralph Lauren, I've been there

20   for 11 years, I manage four individuals; I am not married; I

21   don't have children; I get my news from either TV or social

22   media or You Tube.  I watch too many TV programs, mostly

23   premium channels, I do like ID channel a lot; I could be fair

24   and impartial juror; and the websites I visit would be mostly

25   for shopping.

1           THE COURT:  Okay, thank you.

2           Ms. Williams?

3           THE PROSPECTIVE JUROR:  I live in Briarwood,

4    New York.  Can you hear me?

5           THE COURT:  Yes.

6           THE PROSPECTIVE JUROR:  I live in Briarwood, Queens;

7    I have been living there over 30 years; I'm 66 years old; I

8    own my co-op -- I own two co-ops in Briarwood and I rent one

9    and I live in one; I went to school for two years -- college

10   for two years; I'm retired from the City of New York five

11   years ago, and I was there for 34 years.  I started out

12   working for the commissioner for HRA as an executive secretary

13   and then I got promoted time and time and I actually wind up

14   being the supervisor.  I actually went to -- from the

15   commissioner's office to the office of budget of fiscal

16   affair, then I went to Queens and worked for the Department of

17   Environmental Protection.  When I retired I was working there.

18   I'm not married; I don't have any children; I usually get my

19   news, like, from the evening news.  I try not, being retired,

20   to get into the news because -- you all get stifled.  Sometime

21   I will look at it on my phone, but most of the time I don't

22   really pay that much attention to the news.  The TV programs

23   that I watch are silly things like Mike and Molly, the Food

24   Network, Home Improvement, because I try not to watch too much

25   TV.  I could be fair and impartial juror and I -- only website

1  I basically go to is I Google things I don't know.  If I don't

2  know it, I Google it on my phone, but that's it, I don't go to

3  Facebook or anything else.

4          THE COURT:  Thank you so much.

5          Mr. Sandman?

6          THE PROSPECTIVE JUROR:  Okay.  I live in Massapequa;

7  I lived there, I guess, approximately 50 years; I'm still

8  58 years old; at the moment I guess I'm living at home with my

9  mom who owns the house; I graduated with a bachelor degree;

10  accountant; I'm currently working; I'm employed with a

11  nonprofit cancer organization; I'm the accounting manager; I

12  supervise one person; I guess I worked there, I guess, since

13  1984 -- 30-something years; I'm not married; I have no

14  children; I get my news -- you know, I read Newsday and I get

15  all notifications on my phone, you know, different things; I

16  watch probably too many televisions, you know, AMC, Hulu,

17  Netflix, science fiction shows, cooking channel, so forth; I

18  can be a fair and impartial juror; I visit Facebook and I like

19  visiting, I guess, sites that have to do with papal, that's

20  it.

21          THE COURT:  Thank you so much, sir.

22          Ladies and gentlemen, this is what we're going to do

23  now, okay?  For those of you who are prospective jurors who

24  are in the back of the courtroom, Mr. Manson is going to

25  escort you back down to the jury department, okay?  For those

1   of you who are in the jury box, we are going to take a

2   ten-minute break, okay, and I ask that you return in ten

3   minutes, but I ask that you stay on this floor where you can

4   go to the bathroom, et cetera, but you are under two

5   instructions, okay?  One is do not talk to each other about

6   the case, okay?  Do not talk to anybody about the case.  You

7   may see some of the lawyers or my staff in the hallway.  They

8   are going to ignore you.  They are not being rude.  They are

9   following my instructions not to interact with the jurors,

10  okay?  That's rule number one, do not talk about the case.

11          Number two, you may or may not have your phones with

12  you.  You may be able to send smoke signals, I don't know, do

13  not do any research about the case.  Do not go on the

14  Internet; do not do Google searchs.  If you want to talk about

15  something, there are lots of things to talk about.  You can

16  talk about Game of Thrones, season 8.  Did you like the

17  ending?  Did you not like the ending?  Or you can talk about

18  how the Yankees are really doing great with a triple A team

19  that's playing for them now, okay?  In other words, talk about

20  anything but the case.

21          Hold on one moment.

22          (Pause.)

23          So, ladies and gentlemen, those of you who are

24  seated in the jury box, just so we don't get confused,

25  Mr. Manson is first going to take the jurors who are seated in

1    the back out and down.  After they have left the courtroom,

2    then all of you can leave.  I ask that you leave the number

3    you have on your seat and come back no later than 11:20.

4              All rise, please.  Jurors in the back of the room,

5    you may follow Mr. Manson out.

6              (Prospective jurors exit.)

7              THE COURT:  Ladies and gentlemen, it's okay for you

8    to leave now.  Please leave your number.  Please be back in

9    your seats no later than 11:20.

10             Thank you so much.

11             You don't have to leave.  You are welcome to stay if

12   you would like.

13             Can I see the lawyers at the sidebar, please.

14             (Sidebar.)

15             THE COURT:  Okay.  I will collect you in five

16   minutes to do the peremptory challenges, okay?

17             MR. BRENNAN:  Thank you.

18             THE COURT:  Great.  Thank you.

19             (Sidebar ends.)

20             (The following took place in the jury room.)

21             THE COURT:  Okay, please be seated.  So as I

22   indicated, there would be two rounds.  The defendant will go

23   first in round 1, he has two challenges, followed by the

24   plaintiff who has two challenges, and then the plaintiff will

25   begin round 2 and has one challenge followed by the defendant

1   who has one challenge.

2          As I indicated, if you waive a challenge, we are not

3   -- if you don't use a challenge, it is waived and may not be

4   reserved, so we begin with the defendant with their first two

5   challenges.

6          MR. BRENNAN:  Your Honor, if I may, when we're doing

7   the rounds, are we doing one round now, then we'll go back

8   out, and then do the second?

9          THE COURT:  No.

10         MR. BRENNAN:  We are coming in here and doing

11  everything right now?

12         THE COURT:  Correct.

13         MR. BRENNAN:  In terms of as somebody would -- if

14  they got knocked out, somebody is just going to slide down

15  into that seat and that's how Your Honor will be working that?

16         THE COURT:  Correct.  In other words, if you were to

17  strike, for example, Juror 1, Juror No. 2 will become Juror

18  No. 1 but we won't actually do the sliding over until the

19  entire process is completed.

20         MR. BRENNAN:  Okay.  And the reason for asking Your

21  Honor on that was the prior sequence in calling other ones, or

22  at least one up from the general group in the back, that's why

23  I just wanted to make sure before proceeding.

24         THE COURT:  Yes, that was for the for-cause process.

25         MR. BRENNAN:  Okay.

1      THE COURT:  At this point, it will be -- there will

2  be no others called up, and the first eight jurors will be the

3  jury pool, so why don't you begin with your first strike.

4      MR. BRENNAN:  Okay.  We would strike No. 6.

5      THE COURT:  Mr. Carucci?

6      MR. BRENNAN:  Correct.

7      THE COURT:  Okay, Juror No. 6, Mr. Carucci.

8      For your second challenge?

9      MR. BRENNAN:  None.

10     THE COURT:  Waive?

11     MR. BRENNAN:  Yes.

12     THE COURT:  Okay.  Plaintiff, your first challenge?

13     MR. SHINE:  Jurors 4 --

14     THE COURT:  Okay, Joseph Modena.

15     MR. BRENNAN:  -- and the second is Juror No. 10,

16  Carolyn Leelum.

17     THE COURT:  Juror 10, Leelum.

18     MR. SHINE:  Yes, Your Honor.

19     THE COURT:  All right, that completes round 1.

20     Now we go to round 2, beginning with the plaintiff

21  who has one strike.

22     MR. SHINE:  Juror No. 11, Your Honor, Lynnette Gray.

23     THE COURT:  Okay, Juror 11.

24     And Mr. Brennan, the last strike for the defendants.

25     MR. BRENNAN:  None.

1          THE COURT:  Waive?

2          MR. BRENNAN:  Right.

3          THE COURT:  Okay.  So Judge Amon has asked for eight

4  jurors to be seated, so the jury is as follows:  Juror No. 1,

5  Mr. Trupin; Juror 2, Ms. Chao; Juror 3, Mr. Coupet; Juror 4,

6  Ms. Dubno; Juror 5, Mr. Baboo; Juror 6, Mr. Bain; Juror 7,

7  Mr. Sutikno; and Juror 8, Ms. Lee.

8          That results in Jurors 13 and 14, Ms. Williams and

9  Mr. Sandman, being excused.

10          Okay, do I have that right?

11          MR. SHINE:  Yes, Your Honor.

12          MR. BRENNAN:  Yes, Your Honor.

13          THE COURT:  All right.  We will go into the

14  courtroom, I will excuse the jurors, I will see you at the

15  sidebar to confirm with you that the jury is acceptable to

16  you, and then I'm going to have the jurors come into this room

17  where they will meet with Mr. Manson to give their contact

18  information, and Judge Amon has been notified that we are in

19  the final stages of selection.  I don't know what Judge Amon's

20  plans are, but it may be that she will -- after she swears in

21  the jury and gives preliminary instructions, she may want to

22  go immediately into opening statements, so you should thus

23  prepare?

24          Any questions?

25          MR. BRENNAN:  No.

1        THE COURT:  Thank you so much.

2        MR. BRENNAN:  Thank you.

3        (In open court.)

4        THE COURT:  Okay, ladies and gentlemen, there's a

5   process known as peremptory challenges where the parties are

6   entitled to excuse a juror without giving any reason and

7   that's the process I was just completing with the parties in

8   the jury room.  So now I'm going to call the names of the

9   jurors who have been excused and they are just going to go

10  back to the jury department.  You should take no offense from

11  the fact that you have either been excused or not.  It's just

12  part of the process, okay?

13        So the following jurors are excused:  Mr. Modena,

14  Juror No. 4; Mr. Carucci, Juror No. 6; Ms. Leelum, Juror

15  No. 10; Ms. Gray, Juror No. 11; Ms. Williams, Juror No. 13;

16  and Mr. Sandman, Juror No. 14.

17        This is what we're going to do now for the jurors

18  who are remaining.  Everyone is just going to slide down a

19  little bit, okay?  Mr. Trupin, you are already seated where

20  you should be, you're Juror 1.

21        Ms. Chao, you are where you should be, you're Juror

22  2.

23        Mr. Coupet, you're Juror 3.

24        Ms. Dubno, you are now Juror 4.

25        Mr. Baboo, you are now Juror 5.

1          Mr. Bain, you are now Juror 6.

2          Mr. Sutikno, you are Juror 7.

3          And Ms. Lee, you are Juror 8.

4          Ladies and gentlemen, I just need to see the lawyers

5     at the sidebar, briefly.

6          (Sidebar.)

7          THE COURT:  Is the jury acceptable to the plaintiff?

8          MR. SHINE:  Yes, Your Honor.

9          THE COURT:  Is the jury acceptable to defendant?

10         MR. BRENNAN:  Yes, Your Honor.

11         THE COURT:  Thank you.  I'm going to ask you to have

12    a seat and then I will tell the jurors to follow Mr. Manson to

13    the jury room where their contact information will be taken.

14         Thank you so much.

15         (Sidebar ends.)

16         (In open court.)

17         THE COURT:  Ladies and gentlemen, what's going to

18    happen now is remember what juror number you are and what seat

19    you are in because you will be coming back to those same

20    numbers and seats.  What you are going to do now is follow

21    Mr. Manson who is going to show you to the jury room where

22    your contact information will be taken down in case there's

23    anything that needs to -- we need to contact you for any

24    reason.  While you are in there, please don't talk about the

25    case, please don't do any research on the case, and when you

1   return, someone will come and get you from the jury room.  The

2   case will be -- Judge Amon will be here and the case will be

3   beginning, okay?

4           I wish you luck.  I thank you for your service.

5           All rise.  Please follow Mr. Manson to the jury

6   room.

7           (Prospective jurors exit.)

8           THE COURT:  Okay, ladies and gentlemen, you may be

9   seated, thank you.  Good luck to both sides, have a nice day.

10          MR. BRENNAN:  Thank you, Your Honor.

11          MS. LARKIN:  Thank you.

12          (Matter concluded.)

13

14                  *     *     *     *     *

15

16  I certify that the foregoing is a correct transcript from the
    record of proceedings in the above-entitled matter.

17

18      /s/ Denise Parisi                    June 28, 2019
    _____    _____
19      DENISE PARISI                          DATE

20

21

22

23

24

25